James C. JONES, et al., Plaintiffs,

v.

The NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, et al., Defendants.

Dorothy WILLIAMS, et al., Plaintiffs,

v.

The NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, et al., Defendants.

Nos. 73 Civ. 3815(MEL), 74 Civ. 91(MEL).

United States District Court, S. D. New York.

Jan. 21, 1982.

On Motion for Clarification May 24, 1982.

Patrick O. Patterson, New York City, for plaintiffs.

Frederick A. O. Schwartz, Corp. Counsel of the City of New York, New York City, for defendants; Judith A. Levitt, Asst. Corp. Counsel, New York City, of counsel.

LASKER, District Judge.

In 1975 we held that examinations given by defendants in 1972 for the positions of Supervising Human Resources Specialist, Senior Human Resources Specialist, and Human Resources Specialist were unconstitutional. 391 F.Supp. 1064 (S.D.N.Y.1975), aff'd, 528 F.2d 696 (2d Cir.), *cert. denied*, 429 U.S. 825, 97 S.Ct. 80, 50 L.Ed.2d 88 (1976). Pursuant to that finding, defendants were enjoined from utilizing the results of the 1972 examinations in selecting persons for positions in the Human Resources Specialist (HRS) series, and were ordered, *inter alia*, "to develop lawful non-discriminatory selection procedures" for filling positions in the HRS series "validated in accordance with the EEOC Guidelines on Employment Selection Procedures, 29 C.F.R. § 1607.1 (1970)," (Final Order and Judgment, May 23, 1975, ¶ 5(b)). The defendants were directed to submit a detailed plan for the development of such selection procedures within thirty days of the final order and judgment, which was entered on May 23, 1975. The defendants did not submit such a plan, nor have they developed validated procedures for filling the positions.

In March, 1980, we authorized the defendants to conduct examinations for the HRS series which had not been validated according to the EEOC Guidelines, provided that the use of eligible lists from the examinations for appointment purposes would be subject to court approval. Plaintiffs consented to the utilization of the resulting eligibility lists provided that, pending determination of this motion for further relief, no adverse action would be taken with respect to class members who failed the examination, class members who passed the examination but whom defendants do not intend to appoint, and class members who did not take the recent examination. According to defendants, the 1980 examinations had no adverse impact on the plaintiff class. Plaintiffs do not contest this assertion.

Plaintiffs now move for further relief and to amend their complaints. With respect to the motion for further relief, the defendants have not objected to much of the relief requested in the motion (including the grant of retroactive seniority) except 1) the administration of a second set of promotional examinations and 2) permission for class members to retain their positions or be granted promotions despite their ranking from the recent set of examinations unless the defendants can demonstrate that they have performed unsatisfactorily in their provisional positions.

I.

▪ Plaintiffs contend that a second set of promotional examinations is necessary to ensure that they are made as nearly whole as is currently possible. They emphasize that, due to the illegal examination in 1972 and defendants' failure to comply with the injunctive portions of our 1975 order, some class members have served in provisional status for many years and others have even been promoted provisionally. The recent examinations afford only partial relief, plaintiffs contend, because they still may be deprived of opportunities to obtain permanent appointment to the positions in which they are in fact working. For example, as

a result of the illegality of the 1972 examination, a class member performing satisfactorily for several years in provisional appointments to Senior and Supervising HRS positions may never have obtained a permanent entry level appointment as an HRS. Such a person was not permitted to take the 1980 examination for Senior or Supervising HRS, but instead had to take the examination for the entry-level HRS position. Plaintiffs concede that there is no way to reconstruct with precision the positions that each individual class member might have held if the 1972 examination had met constitutional standards, but argue that it is reasonable to assume that, in the absence of discrimination, class members would have attained permanent appointments to the job titles in which they have been serving provisionally.

Defendants respond that the recent nondiscriminatory examinations together with the grant of retroactive seniority place the plaintiffs in substantially the same position they would have held had the 1972 examinations not been discriminatory. Defendants argue that, in light of the City of New York's intervening fiscal crisis, there is no basis for assuming that, had the earlier examinations been valid, new examinations would have been administered since then to permit promotion to higher permanent appointments. Defendants note that other City agencies, including the Police Department, the Transit Police Department, and the Department of Correction, have been without promotional examinations since 1973.

We find the defendants' position on the issue of the administration of a second set of promotional examinations persuasive. While it is unfortunate that defendants' employees are performing jobs for which they have been unable to obtain permanent status because of a lack of opportunity to take an applicable promotional examination, plaintiffs have failed to demonstrate that this circumstance is causally related to the unconstitutionality of the 1972 examinations. Had the 1972 tests not been discriminatory, plaintiffs would have taken

the examination and been selected or rejected only for the position for which they were then eligible. At the present time, those who passed would have a permanent appointment to that position as well as whatever seniority they would have accrued in the interim. This is the same position in which the plaintiffs stand as the result of whatever selection procedure is now instituted, together with the grant of retroactive seniority. Plaintiffs, in short, have not demonstrated that promotional examinations for the HRS series would have been given since 1972 but for the invalidation of the 1972 examinations.

## II.

Plaintiffs next contend that they ought not be adversely affected by the recent set of examinations because those examinations have not been validated as required by our 1975 order. According to the plaintiffs, they believed throughout their negotiations with the defendants that the 1980 examinations would give great emphasis to work experience and would in all probability result in the permanent appointment of virtually all class members to the job titles they then held provisionally. Plaintiffs' motion for further relief thus sought judicial review of the status, plaintiffs believed, of the very few class members who may not be permanently appointed pursuant to the 1980 examinations. However, the results of the examinations have not matched their expectations. Specifically, while all class members who took the 1980 open competitive examination for entry-level HRS passed and were placed on the eligible list, defendants have appointed only 510 out of the approximately 1,600 candidates who took and passed the examination and propose to make 13 additional appointments according to the ranking from the examination, which would result in the termination of 13 class members who fall below the ranking on the eligible list, and who have been serving provisionally.

Plaintiffs argue that, whether the recent examinations have a disparate impact or not, it is improper to terminate class members on the basis of an examination which has not been validated as job related as required by our 1975 order. According to plaintiffs, they are presumptively entitled to individual relief which will make them whole and restore them to the positions they would have held but for the defendants' discrimination. Conceding that, in the confused posture of this case, they are no longer certain what the appropriate relief would be, plaintiffs propose the following alternatives: 1) permanent appointment for provisional employees who took the 1972 tests to their provisional positions with retroactive seniority, 2) preference for provisional employees who took and passed the recent examinations in appointment to permanent positions, without regard to rank on current eligibility lists, 3) an opportunity for a judicial hearing for class members who would be terminated or denied promotions on the basis of the recent examinations with the burden on the defendants to demonstrate their unfitness for permanent appointment to the position in question.

Defendants oppose any supplemental or corrective relief beyond review of alleged misgrading of examination papers. Defendants argue that, since the recent examinations had no cognizable disparate impact, any presumption that a class member would have passed the 1972 examinations had they not been discriminatory must fall if the class member failed the recent examination. Absent a discriminatory impact, defendants contend, there is no basis for providing class members relief from the recent examinations. Furthermore, defendants emphasize that the contention that the quality of class members' work as provisional employees is the appropriate selection criterion applies equally to non-class members and is, in effect, an argument against the entire New York Civil Service hiring system, which requires competitive examinations to determine merit and fitness.

We agree with plaintiffs that the recent set of examinations may not be allowed to affect the plaintiffs adversely. As already noted, our 1975 order required defendants to develop lawful selection procedures for

the HRS series and to validate those procedures according to the EEOC Guidelines on Employment Selection Procedures, 29 C.F.R. § 1607.1 (1970). While the Court of Appeals has since ruled that the EEOC Guidelines may not be the appropriate standard for determining the validity of selection procedures, *see Guardians Association of the New York City Police Department, Inc. v. Civil Service Commission of the City of New York*, 630 F.2d 79, 110 (2d Cir. 1980), that Court made no suggestion that it is inappropriate, as part of the remedy for unconstitutional employment discrimination, to require that new selection procedures be developed that are *both* non-discriminatory and validated as job related. In any event, defendants here have never moved for relief from that portion of our 1975 order requiring them to validate new selection procedures. Accordingly, as a result of our 1975 order, plaintiffs are entitled to have the decision whether they will receive permanent appointments to the positions for which they took examinations in 1972 determined by procedures which are both non-discriminatory and validated as job related. Defendants were ordered to submit a plan for the development of such selection procedures thirty days after our order. They failed to do so, and have failed to develop a validated selection procedure.

Defendants' contention that the recent examinations should be determinative because they have not been shown to have had a cognizable disparate impact misses the point of the determination now at issue. Defendants seek to treat the recent examinations as a substitute for the 1972 examinations, so that their lack of disparate impact would serve to remedy the constitutional flaw of the 1972 examinations. Whatever constitutional status the recent examinations might have enjoyed had they been administered in 1972, however, the present issue is whether they accord plaintiffs' remedial rights under the 1975 order. Since defendants do not assert that the recent examinations have been validated, the examinations do not fully reflect the plaintiffs' rights under the 1975 order and therefore they may not be utilized to the detriment of individual members of the plaintiff class. While in the first instance plaintiffs may have been entitled merely to a selection procedure which did not discriminate against them, in this litigation plaintiffs won not only the right to non-discriminatory selection procedures, but also the right to selection procedures which have been validated as job related.

Moreover, we cannot ignore the inequities which would result if the defendants' selection procedures were to be approved. Throughout their service as provisional employees, plaintiffs have suffered the uncertainty and insecurity of not having a permanent Civil Service appointment. *See, e.g., Russell v. Hodges*, 470 F.2d 212 (2d Cir. 1972); *City of Binghamton v. Binghamton Civil Service Forum*, 63 App.Div.2d 790, 404 N.Y.S.2d 918 (1978). Many members of the plaintiff class have given years of apparently satisfactory service in this capacity. Since their victory in this litigation, plaintiffs were at least entitled to rely on the provisions of our 1975 order that they would not be terminated or denied promotion except by procedures actually related to their job knowledge or performance. It is now over five years since our 1975 order was entered. Presumably, many class members have made career plans in reliance on the terms of our 1975 order. In these circumstances, it would be manifestly unfair to defeat plaintiffs' justifiable expectations, engendered by this very litigation, that satisfactory performance of their job functions would result in permanent Civil Service appointments. Defendants' proposal to utilize the recent examinations as a determinative selection procedure would thwart these reasonable expectations. While apparently enjoying the virtue of being non-discriminatory (the right to which plaintiffs were originally entitled in 1972), the lack of validation of the recent examinations may leave plaintiffs to the vagaries of randomness rather than to their due under the 1975 order—a selection system both non-discriminatory and actually related to the jobs to be performed. Whatever the constitutional merits of a non-dis-

criminatory selection system may have been in 1972, the plaintiffs need not be left to such an empty remedy at this point of the litigation, after having satisfactorily served for many years in provisional capacities.

Given the defendants' failure to devise a selection procedure according to the specifications of our 1975 order, it becomes necessary to choose among the various alternative selection procedures in order to grant plaintiffs their long overdue final relief in this case. When we authorized defendants to administer the recent examinations, we did so with the explicit caveat that they proceeded at their own risk and that plaintiffs could challenge any adverse action which might otherwise flow to them from the results of the examinations. Having received the results of the examinations, we are inclined to agree with plaintiffs that they suggest a lack of relationship between the examination and the jobs at issue in light of the fact that the examination would adversely affect many class members who have been performing the jobs purportedly tested by the examinations satisfactorily for so great a time. Since, as discussed above, plaintiffs are entitled under our order to a selection procedure validated as job related, defendants' proposal to utilize the recent examinations as a basis for determining plaintiffs' employment status is rejected.

Plaintiffs' proposal that class members who would be adversely affected by the recent examinations be permitted to apply for a judicial hearing at which the defendants would have the burden of demonstrating their unfitness for permanent appointment to the position in question is also unsatisfactory. Such a procedure, as defendants' contend, would tend to render the examinations themselves an empty formality. Regardless of plaintiffs' performance on the 1980 examinations, they would be presumptively entitled to permanent appointment, either through the ordinary procedures based on the examinations or through a judicial hearing where defendants would bear the burden of proving plaintiffs unqualified.

The plaintiffs' other proposals, that provisional employees be permanently appointed or that they be granted a preference if they took and passed the recent examinations, are identical in the critical respect that they presume that provisional employees who have been performing satisfactorily should be entitled to permanent employment. At this point in the litigation of this matter, such a presumption as nearly as possible accords plaintiffs their rights under our 1975 order to a selection procedure that is both job related and non-discriminatory.

Plaintiffs' proposal that each provisional employee who took the unconstitutional 1972 examinations be accorded permanent employment to the position for which they tested in 1972, with the retroactive seniority to which defendants have stated no opposition, appears preferable. This proposal would afford to each aggrieved class member the most complete relief possible while promising finally to draw this litigation to a close.

▉ In sum, the 1980 examinations, which have not been validated as required by our 1975 order, may not be utilized as a selection procedure to the detriment of plaintiffs. In light of the defendants' failure to develop a non-discriminatory and validated selection procedure, the available alternative which is most consistent with the maximization of both job relatedness and non-discrimination, *see, Guardians Association of New York City v. Civil Service Commission of New York City, supra* at 110, is the utilization of plaintiffs' satisfactory service in provisional positions as the criteria for permanent employment. Unless the parties can agree to utilization of the proposal for preferential treatment of provisional class members suggested by plaintiffs, it will be ordered that each provisional class member who took the 1980 examination be permanently appointed to the position for which they tested in 1980.

### III.

Plaintiffs move pursuant to Fed.R.Civ.Pr. 15(a) to amend their complaint to include the identical claim of job discrimination

which has been the subject of this litigation as a claim under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e *et seq.*, and to request an award of attorneys' fees under Title VII and the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. Plaintiffs' request for attorneys' fees after trial was denied on May 30, 1975. *Jones v. New York City Human Resources Administration, supra.* During the pendency of plaintiffs' motion for rehearing on the Supreme Court's denial of certiorari review, four of the named plaintiffs filed charges of employment discrimination under Title VII with the EEOC.

Defendants contend that plaintiffs' motion to amend their complaint should be denied because 1) after final judgment has been entered, a party seeking to amend his pleadings must also move to amend the judgment under Fed.R.Civ.Pr. 59 and 60, 2) after appeals were taken from our final judgment, we no longer had jurisdiction over the judgment and therefore cannot amend the judgment now, 3) the claim sought to be asserted by the plaintiffs' proposed amendment of the complaint has no substantive purpose since plaintiffs had already won final judgment here when they complained of the identical discrimination to the EEOC, 4) it is impermissible to amend the complaint after judgment for the sole purpose of seeking attorneys' fees and 5) plaintiffs have not filed a timely charge with the EEOC and therefore have not satisfied the jurisdictional prerequisites of Title VII.

■ Plaintiffs contend that, since they would be entitled to institute a separate claim under Title VII for attorneys' fees under *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the interests of justice and judicial economy would be served by permitting them simply to amend their pleadings rather than require that a new suit be brought. Plaintiffs emphasize that amendments are permitted under Fed.R.Civ.Pr. 15(a), including those adding new bases for relief after

a plaintiff lost on his or her original cause of action, so long as there is no unfair prejudice or surprise to the defendant and the plaintiff is not in bad faith. Here, plaintiffs contend, defendants have been on notice since the beginning of the suit that plaintiffs would seek an award of attorneys' fees since the plaintiffs requested attorneys' fees in their original complaint.

Plaintiffs' motion to amend their complaint is granted to the extent of permitting the addition of a claim for attorneys' fees under the Civil Rights Attorneys' Fees Awards Act of 1976. Defendants do not contest plaintiffs' assertion that they would be entitled to institute a new action for attorneys' fees under the Act. Accordingly, the interests of judicial economy would be served by permitting such an amendment in this case rather than requiring a new suit. Moreover, the interests in the finality of judgment advanced by the defendants are tempered by the fact that here the suit has been active in a remedial posture throughout the period since the 1975 final judgment and order. In addition, defendants' argument that the amendment should be denied if its purpose is solely to request attorneys' fees is foreclosed by the reasoning of the decision in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980).

With respect to that portion of plaintiffs' motion seeking to amend the complaint to assert a claim under Title VII, leave to amend is denied. Where a proposed amendment to the pleadings is futile, leave to amend the complaint should be denied. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here plaintiffs seek to assert a claim under Title VII which is time-barred under 42 U.S.C. § 2000e–5. Plaintiffs did not present their charges to the EEOC until 1976. The discriminatory acts took place in 1972. Thus plaintiffs failed to comply with the 180 day limitation period of § 2000e–5, a jurisdictional prerequisite to any civil action brought in a district court. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

\*　　\*　　\*

Plaintiffs' motion for further relief is granted to the extent indicated above and otherwise denied. Plaintiffs' motion to amend their complaint is granted to the extent indicated above and otherwise denied.

It is so ordered.

## ON MOTION FOR CLARIFICATION

On January 21, 1982, we granted plaintiffs' motion for further relief to the extent of requiring defendants to appoint to permanent positions for which they tested in 1980 classmembers who had been serving in provisional capacities in the HRS series, despite their performance on the 1980 examinations. Both plaintiffs and defendants have requested clarification and modification of that decision. This Memorandum addresses the issues left open by the decision and answers the request for clarification as to those already considered.

### I.

The primary question presented by the plaintiffs' request for clarification of the decision is its effect on classmembers who have not held provisional appointments in the HRS series. The January 21, 1982, decision was not intended to rule upon the status of classmembers who did not hold provisional appointments in the HRS series and whom the defendants do not intend to appoint because of their performance on the 1980 examination. As we then understood plaintiffs' "Motion For Further Relief," no relief, beyond the administration of the examinations (and a second set of examinations), was sought for classmembers who did not hold a provisional appointment in the HRS series. Plaintiffs now state that their motion was intended to include a prayer for relief for classmembers who would not be appointed pursuant to the 1980 examinations and who have not held provisional appointments in the HRS series in the positions for which they tested in 1980.

The status of the various classmembers for whom plaintiffs seek relief now appears to be: 1) of the 28 classmembers who took the 1980 HRS examinations and who did not score well enough to be appointed to permanent positions, 13 are provisional appointees, whose cases were determined by the decision of January 21, 1982; the remaining 15 do not hold provisional appointments in the HRS series; 2) of the 7 classmembers who took the 1980 Supervising HRS examination but did not score well enough to be appointed pursuant to that examination, one holds a provisional Supervising HRS appointment, and his or her status was determined in our earlier decision, but the remaining six do not hold provisional appointments in the Supervising HRS position, although they hold permanent appointments to the Senior HRS position; and 3) two classmembers scored high enough on the 1980 Supervising HRS examination to be appointed but defendants intend to "pass over" them in making appointments.

With respect to the non-provisional classmembers, plaintiffs contend that they are entitled to permanent appointments to the positions for which they tested in 1980 because they are the victims of discrimination and are therefore presumptively entitled to relief which will, as nearly as possible, make them whole and restore them to the positions which they would have held if the defendants had not discriminated against them. While we agree with the principle expressed by plaintiffs' argument, *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977); *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 772, 96 S.Ct. 1251, 1268, 47 L.Ed.2d 444 (1976), we do not agree that the principle supports the relief presently sought.

It is true that plaintiffs' constitutional rights were violated because the examinations which they took in 1972 for the positions at issue unconstitutionally discriminated against Black and Hispanic candidates. However, the defendants were enjoined in our order of May 23, 1975, from making any appointments pursuant to the unconstitutional examinations. Final Order and Judgment, ¶ 4. Consequently, this is

not a case, like the cases cited above, in which job appointments were actually made pursuant to a discriminatory hiring process and the persons foreclosed by that process were therefore presumptively entitled to job openings to make them whole. Since no one was appointed pursuant to the 1972 examinations, plaintiffs have not been foreclosed from any appointments actually made pursuant to a discriminatory hiring process, and therefore they are not presumptively entitled to openings as they become available.

To be sure, as noted in our January 21, 1982 decision, as a result of this suit plaintiffs won not only the right to a non-discriminatory selection procedure, but also the right to compete for the positions under selection procedures validated as job-related. There is no question that defendants have violated their obligations under the 1975 order to develop such procedures. And, as the situation now stands, plaintiffs (and others) who may be fully qualified for the jobs have had no opportunity to demonstrate their fitness for the positions and to secure the permanent appointments.

However, the relief plaintiffs presently seek on behalf of classmembers who did not hold provisional appointments goes well beyond the loss they suffer as the result of defendants' failure to comply with the 1975 order. The 1975 order provided that classmembers could compete with others for the jobs in question according to a selection process which was to have been validated as job-related. But plaintiffs presently seek to have the court rule upon the fitness of classmembers who did not score well enough on the 1980 examinations. Such a procedure would not entail competition with others according to job-related criteria. Similarly, a blanket preference for classmembers as positions become open would also remove the element of competition with others for the positions and therefore would substantially exceed the remedial rights lost because of defendants' failure

to comply with the 1975 order. The relief won in this case simply did not provide that plaintiffs would be appointed merely upon a showing that they could satisfactorily perform the jobs in question, but rather that they would compete with others according to job-related procedures.

■ It is true that, in our earlier decision, provisional classmembers were granted the extraordinary relief of permanent appointments that did not involve competition with others. The provisional classmembers, however, stand in a very different position than the classmembers now under consideration. Classmembers holding provisional appointments are likely to have relied in making career plans on the provisions of the 1975 order that they would not be denied the positions for which they applied in 1972 except by job-related criteria. Moreover, it would have been reasonable for them to believe that their satisfactory performance in provisional positions at the level tested in 1972 or in higher positions suggested that they would pass muster under job-related selection procedures. It would be manifestly unfair to defeat their reasonable expectations at this late date. In addition, their satisfactory performance in provisional capacities provides a job-related basis for concluding that, had the defendants in fact developed job-related procedures as ordered, the provisional classmembers would probably have been selected for appointment.[1] Accordingly, it was determined that in light of the equities, the extraordinary relief of ordering permanent appointments was warranted. No similar reliance can be inferred from the circumstances of nonprovisional classmembers and no similar job-related criteria exists for classmembers who have never served in the positions for which they tested. In any event, the present circumstances, in which appointments have been made according to nondiscriminatory examinations, suggest

---

1. At the least, it is reasonable to conclude that provisional employees who had performed the actual jobs which would be tested under job-related criteria would be selected ahead of appli-

cants who never worked in the HRS series, many of whom won appointments pursuant to the 1980 examinations.

that further disruptions of the personnel decisions of defendants are unwarranted.[2]

With respect to the two classmembers whom defendants intend to "pass over," counsel for defendants represented at oral argument that these persons are being "passed over" pursuant to the nondiscriminatory application of personnel policy providing for nonpromotion of employees guilty of excessive absenteeism or tardiness. Unless plaintiffs' counsel, following his investigation of the facts, presents a basis for disbelieving defendants' representation, or for concluding that pass-over decisions have been made discriminatorily, further relief is denied these two classmembers.

## II.

Defendants contend that, in the January 21, 1982 decision, their argument that, the permanent appointment of provisional classmembers constitutes an unwarranted preference of classmembers over nonclassmembers was not considered. We believe that the argument was implicitly considered in the discussion of the distinction between plaintiffs' rights in 1972 and their remedial rights in 1980. See Memorandum of May 21, 1982, pp. 7–11. In any event, the differing treatment accorded to classmember and nonclassmember provisionals is not a result of our determination alone. Rather, defendants have made clear throughout this litigation that they are unable to grant permanent status to nonclassmember provisionals on the basis of their performance as provisionals because such a course would violate the New York Civil Service Law. Moreover, the court has no jurisdiction to order defendants to take any action with respect to nonclassmember provisionals, who are not before the court. Accordingly, the differential treatment accorded classmember and nonclassmember provisionals is

the result not of our decision, which merely attempts as nearly as is possible to accord classmembers the rights won in this litigation, but of the defendants' inability, based in *state* law, to treat nonclassmember provisionals in the same manner. The decision granting provisional classmembers permanent status does not itself prevent defendants from granting permanent status to nonclassmember provisionals.

## III.

Plaintiffs seek modification of the references in the January 21, 1982 decision to delays on the part of plaintiffs' counsel. Plaintiffs' counsel has submitted an affidavit explaining that no motion for further relief was made for several years because such a motion would have been futile in light of the City's fiscal crisis and various hiring freezes. We were not aware of such considerations at the time of our earlier decision, and the references in question will be deleted when the decision is reissued.

Plaintiffs also seek modification of the January 21, 1982 decision to include a provision for the retention of jurisdiction and the continued application of the 1975 order. Decision on this request is reserved pending a conference with the parties with respect to the need for such relief in a case of the vintage of this case and in light of the rulings to date.

Defendants seek modification of our earlier decision to reflect the fact that they had not agreed to retroactive seniority as provided in paragraph 16 of Proposed Order A, but rather had stated that they had no opposition to such relief. The opinion will be modified to reflect that fact, and the defendants are hereby ordered to grant retroactive seniority as provided in Proposed Order A, ¶ 16.[3]

---

**2.** In addition, it is worth noting that when they originally moved for further relief in 1980, one of plaintiffs' proposals was only that all provisionals be permanently appointed to the positions for which they tested in 1972. Had that relief been granted at the time it was requested, the nonprovisional classmembers now seeking relief would be in the same position as they will

be in as a result of this decision. Plaintiffs have presented no reason to believe that the passage of time since they originally moved or any other change in circumstance since that time has adversely affected nonprovisional classmembers.

**3.** The statement on Page 13 of the January 21st decision that "each provisional classmember

The requests for clarification and modification of the decision of January 21, 1982, are granted to the extent indicated and otherwise denied.[4]

It is so ordered.

who took the 1972 examination [shall] be permanently appointed to the position for which they tested in 1972 . . ." should refer instead to provisional classmembers who took the 1980 examination being appointed to positions for which they tested in 1980. As we currently understand the list of classmembers provided by defendants, the latest order should be

amended to add a classmember who has been serving provisionally in the Supervising HRS position and who took a 1980 examination for that position.

4. The modifications of the January 21, 1982 decision which have been granted will be incorporated in that decision, which will be reissued.