Kenneth HAUGABROOK, Plaintiff,

v.

CITY OF CHICAGO, et al., Defendants.

No. 81 C 5481.

United States District Court,
N. D. Illinois, E. D.

Aug. 3, 1982.

Steven R. Decker, Chicago, Ill., for plaintiff.

Stanley Garber, Jennifer Duncan-Brice, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Kenneth Haugabrook brought this civil rights action pursuant to the Civil Rights Acts of 1866 and 1871, as amended, 42 U.S.C. §§ 1981, 1983, 1985 and 1986

(1976), seeking damages for injuries allegedly sustained as a consequence of police misconduct. Haugabrook, who is black, alleges that he was wrongfully arrested, searched, kidnapped and beaten by Chicago Police Officers Fred Tilford and Ray Ward after casually addressing the two officers, who are also black, as "brothers" outside the Executive Club Tavern at 6355 South Damen Avenue in Chicago on the evening of September 30, 1980. Haugabrook also alleges that Sergeant Henry Pates conspired with Tilford and Ward in an attempt to discourage Haugabrook from filing a complaint against the two officers. Finally, Haugabrook alleges that Superintendent of Police Richard Brzeczek and the City of Chicago knew or should have known that Officers Tilford and Ward had a propensity to use excessive force against fellow blacks and that the practice by Brzeczek and the City of condoning the officers' prior misconduct precipitated Haugabrook's injury.[1]

This matter is presently before the Court on the motion of Brzeczek and the City for summary judgment pursuant to Fed.R. Civ.P. 56. In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in its favor as a matter of law, *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979); *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976). The non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence in the record. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric*, 295 F.2d 573, 576 (7th Cir. 1961).

## I.

### Section 1983 Claims

In order to prevail on a section 1983 claim against a supervisory official such as Brzeczek, a plaintiff must establish an affirmative link between his injury and the supervisor's failure to act in the face of unconstitutional action by subordinates. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Murray v. City of Chicago*, 634 F.2d 365, 367 (7th Cir. 1980); *Hamrick v. Lewis*, 515 F.Supp. 983 (N.D.Ill. 1981). As far as the City is concerned, it is settled that in order to hold a municipality liable under section 1983, a plaintiff must establish that he was injured by official misconduct or wrongdoing perpetrated pursuant to an officially sanctioned policy, custom or practice that causally links the municipality to the alleged wrongdoing and injury. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981); *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980); *Rivera v. Farrell*, 538 F.Supp. 291 (N.D.Ill.1982); *Hamrick v. Lewis*, 515 F.Supp. 983, 985–86 (N.D.Ill. 1981). Thus, it has generally been held that "where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts." *Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir. 1981); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Villa v. Franzen*, 511 F.Supp. 231, 235 (N.D.Ill.1981); *Spriggs v. City of Chicago*, 523 F.Supp. 138, 142 (N.D.Ill.1981).

In the wake of the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), holding that section 1983 does not contain a

---

**1.** Jurisdiction over the federal claims arises under 28 U.S.C. § 1343 and over the pendent state claims for assault, battery and false imprisonment pursuant to principles of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In an earlier opinion, this Court denied motions to dismiss the complaint filed on behalf of Brzeczek and the City, *Haugabrook v. City of Chicago*, No. 81 C 5481 (N.D.Ill. Feb. 25, 1982).

state of mind requirement, it is entirely possible that even negligent conduct by supervisors or policymaking officials let alone grossly negligent or intentional conduct may support a civil rights claim against the individual official or the municipality in an appropriate case. *See Means v. City of Chicago*, 535 F.Supp. 455, 462 (N.D.Ill.1982). *But see Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982); *Spriggs v. City of Chicago*, 523 F.Supp. 138, 142–43 (N.D.Ill.1981). We need not decide the question in the case at bar, however, for we conclude that the record is devoid of evidence to support a claim against either Brzeczek or the City under any standard.

In the instant case, Haugabrook alleges that Brzeczek and the City knew or should have known that Officers Tilford and Ward "had a propensity to use excessive force upon Black citizens of the City of Chicago," and that they "failed to properly train, supervise, regulate or discipline these two officers in the exercise of their police function." Complaint, ¶ 20. To support his theory that Brzeczek had knowledge of the alleged violent propensities of Tilford and Ward, Haugabrook points to the officers' complaint history records, commonly known as "hard cards." Officer Tilford's card indicates that during the five and one-half years since he became a police officer, he received two citizen complaints for use of excessive force. Tilford's record indicates that the Chicago Police Department classified both complaints as "not sustained," meaning that, after an appropriate investigation, there was insufficient evidence to either prove or disprove the allegations. Defense Exhibit 1. Officer Ward's card reveals fifteen citizen complaints alleging the use of excessive force in the six and one-half years that he has been a police officer.[2] Ward's record indicates that five of the complaints were found to be "not sustained," nine were found to be "unfounded," meaning that, after an appropriate investigation, the department considered them to be false or not supported by the facts, and the remaining complaint was classified as "exonerated," meaning that an investigation revealed that the incident occurred but was lawful and proper. Defense Exhibit 2. The complaint records of the two officers are the only evidence cited to support the argument that Brzeczek and, through him, the City had knowledge that the officers had violent propensities toward fellow blacks and that such behavior was condoned by Brzeczek and the City.

On the basis of this evidence, the Court cannot conclude that Brzeczek or the City knew or should have known of any alleged violent propensities of Officers Tilford and Ward or that they failed to train, supervise, regulate or discipline the officers as alleged in the complaint. Brzeczek's affidavit, which is unrebutted by Haugabrook, states that his sole knowledge relative to the complaints against Ward and Tilford is set forth in the hard cards. As stated above, the recorded allegations of excessive force made against each officer were investigated by the Chicago Police Department and found to be either "not sustained," "unfounded" or, in one case, "exonerated." Haugabrook has not alleged or shown that Brzeczek knew or should have known of any unrecorded prior complaints or any other evidence tending to show that the officers had a tendency to react violently to black citizens. There is also no evidence to suggest that the prior recorded charges of excessive force, even if they had been sustained, were racially motivated. In short, Haugabrook has failed to

2. Counsel for both parties seem to agree that only *eight* citizen complaints were filed against Officer Ward during the relevant time period. However, while there are only eight complaints listed on the first page of Ward's complaint record, there are *seven more* complaints listed on the second page which the parties seem to have ignored. Perhaps not all of the citizen complaints listed involved allegations of the use of excessive force, but the parties have not differentiated among the listed complaints. In the context of a motion for summary judgment, all reasonable inferences from the evidence presented must be construed in favor of the non-moving party and the Court thus assumes that all the citizen complaints against Officer Ward listed on his hard card involved the use of excessive force in the absence of any alternate explanation by the parties.

provide any basis upon which a court could infer that Brzeczek or the City negligently, recklessly or intentionally allowed these two officers with alleged violent propensities toward blacks to remain in uniform resulting in any injury to the plaintiff.[3]

Accordingly, there being no genuine issue of fact material to a judgment in their favor as a matter of law, defendants' motions for summary judgment on the section 1983 claims will be granted.

## II.

### Section 1981 Claim

The more difficult question in this case concerns Haugabrook's claim that the City should be held liable for the allegedly racially-motivated acts of Officers Tilford and Ward on a theory of *respondeat superior* under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.[4] The specific

allegations of racial discrimination are set forth in the complaint as follows:

14. Plaintiff was subjected to the above officially inflicted punishment, pains and penalties, and loss of property, because of his race, as the Defendant's [sic] WARD and TILFORD did not consider the Plaintiff to be their "brother." Plaintiff was denied the "equal benefit of laws and proceeding" and "security" to his "person and property" because of his race.

\* \* \* \* \* \*

19. These officers, acting while clothed with the authority of the City of Chicago, and motivated by racial bias towards the Plaintiff, unlawfully caused grievous bodily harm to the Plaintiff.

The City strenuously argues that a municipality should not, as a matter of law, be held vicariously liable under section 1981 for the official misconduct of its employees.[5] The City's argument is based on the

---

**3.** This case is distinguishable from others in which a supervisory official had deliberately avoided disciplining officers whom he knew faced civil or criminal sanctions for unconstitutional acts against citizens, *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir. 1981); *Popow v. City of Margate*, 476 F.Supp. 1237 (D.N.J.1979), or in which a supervisory official should have known of the violent propensities of a particular officer on the basis of prior complaints for which he was disciplined or his general reputation in a small police department, *Brandon v. Allen*, 516 F.Supp. 1355 (W.D.Tenn.1981). Nor is this a case in which the adequacy of internal investigative procedures has been brought into question. Haugabrook does not allege, nor would anything in the record suggest, that the Chicago Police Department inadequately investigated the prior complaints against Tilford and Ward. The particulars of those prior incidents are not in the record and, although Haugabrook was provided with the files concerning those incidents during discovery, Haugabrook does not challenge the department's determinations that the officers were not at fault on those occasions. Instead, Haugabrook has attempted to create an issue of fact to prevent the entry of summary judgment by arguing that Brzeczek or the City should have required Tilford and Ward to undergo psychiatric evaluations or additional training after complaints were lodged against them, regardless of whether the complaints were sustained. In the absence of any contrary evidence, however, the department's procedures must be accorded a fair amount of deference by the Court. *See, e.g., Rizzo v. Goode,*

423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Without any showing that the department's internal investigation procedures were faulty or evidence that might support an inference that the officers engaged in prior wrongful conduct despite the determination of the department to the contrary, the Court cannot conclude that the failure to require psychiatric testing or further training of officers who have not been found to have done anything wrong creates a material issue of fact with respect to the allegations that Brzeczek or the City condone the excessive use of force by black police officers against black citizens.

**4.** 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**5.** As a threshold matter, we note that section 1981 is not confined to contractual matters, though it is most often invoked in that context. *See, e.g., Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). As the Third Circuit noted in *Hall v. Pennsylvania State Police*, 570 F.2d 86, 91 (3d Cir. 1978), "[r]acially motivated misuse of governmental power falls within the ambit of its 'equal bene-

Supreme Court's seminal decision, *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Court held that municipalities are not subject to liability on a *respondeat superior* basis in suits brought under section 1983.

Prior to *Monell*, municipalities were not considered "persons" within the meaning of section 1983 and therefore were immune from liability under that section. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). But a number of courts, including the United States Court of Appeals for the Seventh Circuit, held that the municipal immunity recognized under section 1983, which was enacted by Congress to enforce the fourteenth amendment as section 1 of the Civil Rights Act of 1871, did not extend to suits brought under section 1981, which was originally enacted under the thirteenth amendment as section 1 of the Civil Rights Act of 1866 and later reenacted under the fourteenth amendment as section 16 of the Enforcement Act of May 31, 1870. *Garner v. Giarrusso*, 571 F.2d 1330, 1338–41 (5th Cir. 1978); *United States v. City of Chicago*, 549 F.2d 415, 424–25 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Mahone v. Waddle*, 564 F.2d 1018, 1030–37 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1160 (9th Cir. 1976). These courts emphasized the substantial differences between the two statutes as indicated by their respective language, purpose and legislative history, and they noted, as has the Supreme Court on several occasions, that the civil rights statutes should be construed individually since "[d]ifferent problems of statutory meaning are presented by two enactments deriving from different constitutional sources," *District of Columbia v. Carter*, 409 U.S. 418, 423, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1972), *quoting Monroe v. Pape,*

*supra*, 365 U.S. at 205–06, 81 S.Ct. at 493–494 (Frankfurter, J., dissenting). *See Garner v. Giarrusso, supra*, 571 F.2d at 1340; *Mahone v. Waddle, supra*, 564 F.2d at 1030–31; *Sethy v. Alameda County Water District, supra*, 545 F.2d at 1160.

In rejecting the notion that a municipality could be held vicariously liable for the unconstitutional acts of its employees, while recognizing that a municipality was a "person" subject to liability under section 1983 under some circumstances, the *Monell* Court relied upon the peculiar language, purpose and legislative history of that statute. The Court emphasized the limiting language of the statute that requires a strict causal connection between the conduct of a person acting under color of state law and injury to the plaintiff. 436 U.S. at 691–92, 98 S.Ct. at 2036. "Equally important," said the Court, was Congress' rejection of the Sherman Amendment which would have imposed vicarious liability upon a municipality for the private actions of its citizens. 436 U.S. at 693–94, 98 S.Ct. at 2037. The Court concluded that "when Congress' rejection of the only form of vicarious liability presented to it is combined with the absence of any language in § 1983 which can easily be construed to create *respondeat superior* liability, the inference that Congress did not intend to impose such liability is quite strong." 436 U.S. at 692 n.57, 98 S.Ct. at 2037 n.57.

Neither rationale enunciated in *Monell* has any bearing on section 1981, however. The unequivocal language of that section and its legislative history "manifests Congress' purpose to enact sweeping legislation implementing the thirteenth amendment to abolish all the remaining badges and vestiges of the slavery system." *Mahone v. Waddle, supra*, 564 F.2d at 1030. While section 1983 is specifically directed at proscribing only that conduct undertaken by persons acting under color of state law,

---

fit' and 'like punishment clauses' which provide that 'all persons . . . shall have the same right . . . to the full and equal benefit of all laws . . . for the security of persons and property . . . as is enjoyed by white citizens, and shall be sub-

ject to like punishment, pains, penalties . . . and exactions of every kind, and to no other.' " *Accord: Spriggs v. City of Chicago*, 523 F.Supp. 138, 145–47 (N.D.Ill.1981).

section 1981 contains no such limitation and it has been held to apply to private as well as public acts of discrimination without regard to who the actor might be as long as the plaintiff suffered discrimination because of his or her race. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Moreover, the legislative history of section 1981 does not evidence any intention to reject the concept of *respondeat superior* ordinarily applicable in common-law tort actions or to import into that statute any strict causation requirements as are apparent in the debates on and the wording of section 1983.[6] In sum, as one court has bluntly stated:

> [t]here is nothing in § 1981 to lead a court to believe that *respondeat superior* is inapplicable to actions brought under that statute and every court which has engaged in a meaningful analysis of the issue has so held.

*Jones v. Local 520, International Union of Operating Engineers*, 524 F.Supp. 487, 492 (S.D.Ill.1981) (citations omitted).

There is ample authority in this and other circuits for the proposition that private corporate defendants may be held liable on a *respondeat superior* basis under section 1981 for the racially discriminatory conduct of their employees. *Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir. 1979); *Flow-*

ers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977); *Jones v. Local 520, supra; Commonwealth of Pennsylvania v. Local 542, International Union of Operating Engineers*, 469 F.Supp. 329, 401–13 (E.D.Pa. 1978). Furthermore, there is no principled reason to distinguish between private and public employers based upon the wording or history and purpose of section 1981, and a growing body of case law supports the notion that a municipality also can be held vicariously liable for the official acts of its employees. *Mahone v. Waddle, supra; Bell v. City of Milwaukee*, 536 F.Supp. 462, 474 (E.D.Wis.1982); *Williams v. City of New York*, 539 F.Supp. 795 (S.D.N.Y.1982); *Jones v. City of Philadelphia*, 491 F.Supp. 284, 288 (E.D.Pa.1980); *Preston v. City of York*, 452 F.Supp. 52, 54 (M.D.Pa.1978); *Croswell v. O'Hara*, 443 F.Supp. 895, 898 (E.D.Pa.1978). *See generally* Comment, *Developments in the Law—Section 1981*, 15 Harv.Civ.R.Civ.Lib.L.Rev. 29, 204–10 (1980).[7] All these cases, except *Williams*,[8] involved allegations that the plaintiff was abused by police officers because of his race as in the case at bar.

Accordingly the City's motion for summary judgment on Haugabrook's section 1981 claim will be denied.

### Conclusion

For the reasons set forth above, defendants' motion for summary judgment is

---

**6.** In fact, Congress' emphasis on broad, sweeping legislation to implement the thirteenth amendment cautions against such an inference with respect to section 1981. The debates on section 1983, on the other hand, evidence Congress' intent to temper its protection of civil rights against encroachment by the states with countervailing concerns of federalism. *Mahone v. Waddle, supra*, 564 F.2d at 1031. Based upon the clear legislative history and consistent judicial construction of section 1981, it is our view that it is the prerogative of Congress—not the courts—to decide whether the doctrine of *respondeat superior* should be made inapplicable in section 1981 cases as it is in section 1983 cases.

**7.** *But see Boyden v. Troken*, 358 F.Supp. 906, 907–08 (N.D.Ill.1973); *Hampton v. City of Chicago*, 339 F.Supp. 695, 697 (N.D.Ill.1972), *reversed on other grounds*, 484 F.2d 602, 611 (7th

Cir. 1973); *Sanberg v. Daley*, 306 F.Supp. 277, 278 (N.D.Ill.1969). These cases all held, before *Monell* and without any discussion, that the doctrine of respondeat superior was inapplicable in actions against a municipality under section 1983 *and* section 1981. The absence of any discussion concerning the significant differences in the language, legislative history and purpose of the two statutes, however, deprives these decisions of much precedential value or effect. *Cf. United States v. City of Chicago*, 549 F.2d 415, 425 n.9 (7th Cir. 1977) (cases holding that city was not a "person" for purposes of both section 1981 and 1983 not binding where they gave no consideration to the quite different language and history of section 1981).

**8.** *Williams* involves an employment discrimination claim.

282

granted with respect to plaintiff's section 1983 claims, but the City's motion is denied with respect to plaintiff's section 1981 claim. It is so ordered.