**Ruben MENDEZ and Elizabeth Mendez, a minor, Through Ruben Mendez, her father and natural guardian, Plaintiffs,**

v.

**Robert RUTHERFORD, Dean Angelo, Individually and as Chicago Police Officers, and the City of Chicago, a Municipal Corporation, Defendants.**

No. 86 C 5687.

United States District Court, N.D. Illinois, E.D.

June 13, 1988.

---

the car in his backyard, Mendez was approached by Robert Rutherford, a Chicago Police Officer. Rutherford told Mendez to move his car. Officer Rutherford and Dean Angelo, another Chicago Police Officer, without provocation and for no just cause, pulled Mendez from the car by his hair, threw him against a garage and then onto the ground. Officers Rutherford and Angelo then handcuffed Mendez and brutally and savagely beat him while three-year-old Elizabeth watched from the car and cried. Mendez pleaded with Officers Rutherford and Angelo that his daughter was in the car watching and crying, to which Officer Angelo responded, "I don't care." Mendez was beaten for about fifteen minutes, while handcuffed and while Officer Angelo repeatedly shoved a police flashlight into Mendez's mouth. *Mendez v. Rutherford, et al,* 655 F.Supp. 115, 117 (N.D.Ill.1986). Mendez was arrested. After arriving at the police station, Mendez was again attacked, battered and threatened with bodily harm by Officer Angelo.

Mendez was charged with two counts of battery and one count of resisting arrest. He was acquitted of these charges in a bench trial on May 12, 1986. As a result of the violence during the arrest, Mendez required emergency medical treatment and subsequent medical and dental treatment. Elizabeth suffered severe emotional trauma as a result of her witnessing the attack on her father by Officers Rutherford and Angelo.

### The Complaint

The complaint consists of four counts. Counts I and II seek relief for both Mendez and Elizabeth pursuant to 42 U.S.C. §§ 1981 and 1983 and for First, Fourth and Fourteenth Amendment (substantive due process) violations. Count III seeks to extend liability to the City of Chicago on the basis of respondeat superior. Count IV seeks relief through pendent state law theories for intentional infliction of emotional distress and willful and wanton conduct against Elizabeth and malicious prosecu-

Elliott R. Zinger, Chicago, Ill., for plaintiffs.

James J. Ryan, Asst. Corp. Counsel, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Ruben Mendez ("Mendez") and his minor daughter Elizabeth Mendez ("Elizabeth") bring this civil rights action under 42 U.S.C. §§ 1981 and 1983 (1982) against the City of Chicago on the basis of events surrounding Mendez's arrest by Chicago police officers on April 10, 1985. Presently before the Court is the City of Chicago's motion to dismiss parts of the Third Amended Complaint. For the reasons stated below, we deny that motion.

### Facts [1]

On April 10, 1985, Mendez was driving his family to his home on West Shakespeare in Chicago, Illinois. While parking

---

1. For purposes of a motion to dismiss, we must take the allegations in the complaint as true and view them in the light most favorable to the

plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

tion against Mendez. The City of Chicago has moved to dismiss both the § 1983 and § 1981 claims. The City also moved to dismiss any claim stated directly under the First, Fourth and Fourteenth Amendments against all defendants. In their response, the plaintiffs voluntarily agreed to dismiss the § 1983 claim against the City and any claims arising directly under the First, Fourth and Fourteenth Amendments and present their case against the City solely under 42 U.S.C. § 1981.

## Section 1983

Although plaintiffs have voluntarily dismissed the § 1983 claims against the City, a preliminary examination of § 1983's purpose and requirements is useful in resolving the City's challenge to the § 1981 claim. While § 1983 [2] is modeled on Section 2 of the Civil Rights Act of 1866, it specifically began as Section 1 of the Ku Klux Act of 1871. Nahmod, *Civil Rights and Civil Liberties Litigation* 4 (2d ed. 1986). Enacted during the aftermath of the Civil War, § 1983's predecessor was intended to prevent the government from usurping, by means of official policy or custom, those rights guaranteed by the Fourteenth Amendment. *Id.*

Municipalities and other local government units are considered "persons" for the purposes of § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), *overruling on this point, Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus, cities can be sued under § 1983 for the constitutional torts of their agents. However, such suits must be brought directly against the city as the Supreme Court has emphasized that respondeat superior is an insufficient theory upon which to base a claim for municipal liability. *Monell*, 436 U.S. at 691, 98 S.Ct.

at 2036 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a respondeat superior theory") (emphasis in original); Nahmod, *Civil Rights and Civil Liberties Litigation the Law of Section 1983*, 349–50 (2d ed. 1986) (the mere right to control without control or direction being exercised is not enough to support § 1983 liability). Municipal liability attaches when

> the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.

*Monell*, 436 U.S. at 690, 98 S.Ct. at 2035–36 (1978). Only when a municipal "policy" or "custom" is the catalyst for a constitutional deprivation can a city have, in the words of § 1983, "cause[d the plaintiff] to be subjected" to the wrong. This Court has stated that in order to hold a municipality liable under § 1983, "a plaintiff must establish that he was injured by official misconduct or wrongdoing perpetrated pursuant to an officially sanctioned policy, custom or practice that causally links the municipality to the alleged wrongdoing and injury." *Haugabrook v. City of Chicago*, 545 F.Supp. 276, 277 (N.D.Ill.1982); *Spriggs v. City of Chicago*, 523 F.Supp. 138, 141 (N.D.Ill. 1981). Therefore, in order for a *Monell-*

---

**2.** Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

type complaint to survive a motion to dismiss, a plaintiff must first allege and establish a constitutional or statutory violation by the municipality's agents. And, second, the plaintiff must establish the existence of a municipal "policy" or "custom" which acted as the catalyst for the violation.

### Section 1981

■ Section 1981[3] differs substantially from § 1983 in its language, purpose and legislative history. While § 1983 prohibits abuses of official power and position, § 1981 prohibits all racial discrimination. Taking these differences into account, the civil rights statutes should be construed individually. *Haugabrook*, 545 F.Supp. at 280 ("different problems of statutory meaning are presented by two enactments deriving from different constitutional sources") (citations omitted). Section 1981 originated as Section 1 of the Civil Rights Act of 1866. 1 *Statutory History of the United States Civil Rights* 101 (B. Schwartz ed. 1970). Introducing the Civil Rights Act of 1866 to Congress, Senator Lyman Trumbull stated that its purpose was to give effect to the Thirteenth Amendment and to secure all persons within the United States practical freedom and the fundamental civil rights set forth in Section 1. *Id.* at 106, 110. When questioned as to how he interpreted the term "civil rights," Senator Trumbull replied,

> The first section of the bill defines what I understand to be civil rights: the right to make and enforce contracts, to sue and be sued, and to give evidence, to inherit, purchase, sell, lease, hold, and convey real and personal property, and to full and equal benefit to all laws and proceedings for the security of person and property. These I understand to be civil rights, fundamental rights belonging to every man as a free man, and which under the Constitution as it now exists we have a right to protect....

1 *Statutory History of the United States Civil Rights* 113 (B. Schwartz ed. 1970). Thus, the Act not only attempted to remedy all of the discriminations advocated by the Black Codes, but it went further; it affirmatively secured for all citizens of the United States regardless of race or color what Senator Trumbull called "the great fundamental rights." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 432, 88 S.Ct. 2186, 2199, 20 L.Ed.2d 1189 (1968) (in passing the Civil Rights Act of 1866, both the Senate and the House believed that the Act was a comprehensive statute forbidding all racial discrimination affecting the basic rights enumerated in the Act). Nor was the scope of Section 1 of the Civil Rights Act of 1866 affected by its reenactment under Section 18 of the Enforcement Act of 1870, about two years after the ratification of the Fourteenth Amendment. 1 *Statutory History of the United States Civil Rights* 415 (B. Schwartz ed. 1970).

Because plaintiffs have conceded to the City's position on all other issues presented in its motion to dismiss, the only remaining question in this case is whether § 1981 extends to and makes actionable against the City the beating, arrest and search of the plaintiff by two Chicago Police Officers, actions that the plaintiff alleges were "motivated by racial bias." Third Amended Complaint ¶ 19. Although this Court superficially addressed the issue of whether the scope of § 1981 extends beyond contractual matters, *Haugabrook v. City of Chicago*, 545 F.Supp. 276 n. 5 (N.D.Ill. 1982), the present case presents a direct challenge that we must address in greater depth.

The Third Circuit provides a well-articulated answer to the question of whether § 1981 prohibits more than just racial discrimination in contracts. In that court's opinion, racially-motivated physical abuse and misuse of governmental power fall

---

**3.** Section 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

within the rubric of § 1981's "equal benefit" and "like punishment" clauses, *Mahone v. Waddle*, 564 F.2d 1018, 1029 (3d Cir.1977), *cert. denied sub nom, Pittsburgh v. Mahone*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), which provide that "[a]ll persons ... shall have the same right ... to the full and equal benefit of all laws ... for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties ... and exactions of every kind, and no other." 42 U.S.C. § 1981. The *Mahone* court determined that allegations similar to those in the present case[4] are sufficient to plead a § 1981 violation. *Mahone*, 564 F.2d at 1027–30. *Accord Spriggs v. City of Chicago*, 523 F.Supp. 138, 145–47 (N.D.Ill.1981).

Nevertheless, the City persists in arguing that § 1981 applies solely to contractual matters. To read the statute so narrowly ignores not only its historical basis and the intent of its authors, but the majority of its provisions. As this Court noted, while § 1981 is primarily invoked in contractual matters, its vitality is not limited to that context. *Haugabrook v. City of Chicago*, 545 F.Supp. at 279 n. 5. Furthermore, the Supreme Court recently remarked that

> Section 1981 has a much broader focus than contractual rights. The section speaks not only of personal rights to contract, but personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property; and all persons are to be subject to like punishments, taxes and burdens of every kind.... Its heading was and is "Equal

Rights Under the Law" and is contained in a chapter entitled "Civil Rights."

*Goodman v. Lukens Steel Co.*, —— U.S. ——, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). To accept the City's construction of § 1981 cuts the heart out of the statute and reduces the majority of its provisions to empty assurances.

■ More importantly, the plaintiffs' allegations fit readily within the parameters of the statutory requirements. In this case, a Hispanic citizen claims that, because of his race, he was subjected to an illegal beating, arrest and search. Furthermore, the plaintiff alleges that Officers Rutherford and Angelo were acting while clothed in their authority as Chicago city police officers and that the City of Chicago employed these police officers at the time of the incident. In terms of the statutory construction, these allegations amount to a claim that the plaintiff was subjected to greater "punishments, pains, [and] penalties" than a white citizen must face. The right to freedom from racially-motivated police brutality is attended by a complementary right to receive police protection without discrimination. To the extent the plaintiff was denied his rights under § 1981's "like punishment" clause, he was also denied his rights under the "equal benefits" clause. Racially-motivated arrests, beatings and searches made in the absence of probable cause easily fall within the wording of § 1981. *Mahone*, 564 F.2d at 1028. Given its historical background, it seems reasonable to construe § 1981 as reaching the events of April 10, 1985, which are alleged in the complaint.

4. In *Mahone v. Waddle*, 564 F.2d 1018, 1020–21 (3d Cir.1977), *cert. denied sub nom, Pittsburgh v. Mahone*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), the plaintiffs, two black citizens of the Pittsburgh area, claimed that while driving on a public road two Pittsburgh police officers stopped them without probable cause for a supposed traffic violation. The officers subjected the plaintiffs to racially-motivated physical and verbal abuse, handcuffed them and took them to the police station. At the station, the plaintiffs were charged with driving too fast for road conditions and following too closely. Both charges, the plaintiffs alleged, the officers knew were false and unfounded. *Id.*

The plaintiffs alleged that the conduct of the police officers occurred under color of state law, that the officers were "motivated by racial prejudice," and that they acted "with purpose of depriving Plaintiffs of equal protection and benefits of the law, equal privileges and immunities under the law, and due process...." *Id.* The plaintiffs sued both the individual police officers and the City on the grounds that their rights under 42 U.S.C. §§ 1981, 1983 and 1985 and the United States Constitution were violated. Three distinct grounds for relief were asserted against the City including a claim under 42 U.S.C. § 1981 based on respondeat superior.

In conclusion, we deny the City's motion to dismiss plaintiffs' claims under 42 U.S.C. § 1981 because we conclude that the complaint adequately states a claim under that statute. We do, however, with plaintiffs' consent, grant the City's motion to dismiss the claim against it under 42 U.S.C. § 1983 and any direct claims against all defendants under the First, Fourth and Fourteenth Amendments. It is so ordered.