UNITED STATES of America,
Plaintiff,

v.

INTERNATIONAL BUSINESS MA-
CHINES CORPORATION,
Defendant.

No. 69 Civ. 200.

United States District Court,
S. D. New York.

July 18, 1973.

See also, D.C., 60 F.R.D. 650.

Raymond M. Carlson, Joseph H. Widmar, Richard L. Osborne, Grant Moy, and Eugene M. Katz, Attys., Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Thomas D. Barr, George B. Turner, Bruce Bromley, Frederick A. O. Schwarz, Cravath, Swaine & Moore, New York City, Nicholas deB. Katzenbach, Vice President and Gen. Counsel, International Business Machines Corp., Armonk, N. Y., Walter H. Beebe, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge:

This civil action was brought by the United States against the International Business Machines Corporation (IBM), alleging violations of Section 2 of the Sherman Act. 15 U.S.C. § 2 (1970). The complaint, filed on January 17, 1969, charges that IBM monopolized and attempted to monopolize the market in general purpose digital computers. During the next three years the parties generated little activity in this case. Finally, on January 6, 1972, the Government moved for the appointment of a Rule 2 judge.[1] The defendant cross-moved under Rule 42 of the Federal Rules of Civil Procedure for an order consolidating this case with United States v. International Business Machines, Corp., Civ.No.

72–344.[2] On January 26, 1972 an order was entered providing, in effect, that this court would retain these actions for all purposes. Pursuant to the court's direction, the Government on September 12, 1972, filed a Tentative Statement of Triable Issues on Market Definition. In response to a further order, IBM submitted its reply to plaintiff's statement.[3]

Currently, the court has before it a motion by IBM for an order under Rule 42(b) of the Federal Rules of Civil Procedure, directing that a separate trial be held on the issues of market definition. Concurrently, defendant has moved for an order permitting the use of a "Census of the Electronic Data Processing Industry" in the proposed separate trial.[4]

In pertinent part, Rule 42(b) provides that, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of . . . any separate issue." In essence, the court is called upon to decide whether a separate trial on the issue of market definition will serve these ends. Although only one of these conditions need be met for the court to order a Rule 42(b) separate trial, defendant argues that each is present in this case. The arguments put forth by defendant fall into two broad categories: those resting on alleged prejudice to

1. At that time Rule 2(b) of the General Rules of this court provided in part that "The chief judge upon his own motion or the motion of any party, may assign a long and complicated case to a judge for all purposes including the following: (1) to hear all motions and preliminary applications; (2) to conduct the pretrial conference; and (3) to preside at the trial of the action."

2. The earlier case had been assigned to this court pursuant to General Rule 2 in 1952 by Chief Judge John Clark Knox.

3. IBM's response to plaintiff's Tentative Statement of Triable Issues is contained in Appendix A to the affidavit of Thomas

D. Barr, sworn to October 14, 1972, and submitted in support of the instant motion. Appendix A to the Barr affidavit sets out each of plaintiff's tentative issues on market definition followed by IBM's response with regard to that issue.

4. This Census was taken under the direction of Judge Phillip Neville of the United States District Court for the District of Minnesota. It was ordered in the course of proceedings in a number of private treble damage suits against IBM, which were assigned to Judge Neville for pretrial purposes by the Panel on Multidistrict Litigation. The United States was not a party to any of the suits before the court in Minnesota.

IBM; and those which relate to ease of adjudication.

### Prejudice to Defendant

█ Counsel for IBM have stressed, repeatedly, that the investigation underlying this suit has been in progress for six years, and that the actual litigation has already consumed four years. Defendant claims that this cloud has prejudiced it in every facet of its business. This argument, however, misapprehends the purpose of the rule. As one commentator has stated: "A separate trial may also be ordered to avoid prejudice, as where evidence admissible only on a certain issue may prejudice a party in the minds of the *jury* on other issues." C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2388 (emphasis added). *See also*, Larsen v. Powell, 16 F.R.D. 322 (D.Colo.1954) (fact of insurance might prejudice the jury); Baker v. Waterman S.S. Corp., 11 F.R. D. 440 (S.D.N.Y.1951) (gruesome nature of injuries of one plaintiff might prejudice the jury); Note, Separate Trial of a Claim or Issue in Modern Pleading: Rule 42(b) of the Federal Rules of Civil Procedure, 39 Minn.L.Rev. 743, 751–52 (1955) (and cases cited therein).

In this civil action, to be tried to the court sitting without a jury, the kind of prejudice contemplated by Rule 42(b) does not come into play. There is no danger that evidence admissible on the issues relating to conduct by defendant will "contaminate" the mind of the finder of fact in its consideration of the market definition issues. Consequently,

no prejudice, as that term has been interpreted under Rule 42(b), will enure to defendant if its motion for a separate trial on the market definition issues is denied.

█ Notwithstanding this result, there is merit in IBM's claim that defendants in civil actions are entitled to prompt dispositions of suits brought against them. The court agrees with this proposition and is determined to bring about a speedy trial of this action, despite the endless frustrations of that objective which have appeared. However, IBM's argument implicitly assumes that a separate trial of the market issues will result in a speedy resolution of this litigation. Since the court rejects this assumption,[5] defendant's argument resting on it must also fall.

### Ease of Adjudication

Defendant's principal argument, in support of its motion, is that a separate trial on the issue of market definition would further convenience and be conducive to expedition and economy. In response, plaintiff contends that there will be extensive duplication of witnesses and testimony between the trial on the market issues and the main trial. It concludes that this "overlap" militates against the achievement of the objectives of the Rule.

█ Cases cited by the parties, which discuss separate trials in other contexts, are of little relevance in determining whether a separate trial in this case will promote ease of adjudication. The only reported[6] decision found by the parties

---

5. *See* discussion at p. 66 *infra*.

6. Defendant has referred the court to an unreported decision in United States v. General Motors Corp., (Civ.Action 15816, E.D.Mich.). In a letter to counsel dated July 13, 1960, Judge Levin suggested that a separate trial on the question of market definition would prove helpful. In a second letter, dated May 21, 1962, Judge Levin reported to counsel on the results

of that trial. In his "informal opinion" he said "Because many of the items I believe to be helpful to a determination of the relevant market issues are so intertwined with other aspects of the case, I have concluded that it would be better to defer ruling upon this question until the entire case has been heard upon its merits. It is my opinion that, even though the relevant market problem has been left open, the separate trial has focused atten-

or the court, which has directly faced this question, is Reliable Volkswagen Sales and Service Co. v. World-Wide Automobile Corp., 34 F.R.D. 134 (D.N. J.1963). In that private antitrust suit, brought under Sections 1 and 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 2, 15 (1970), the court denied defendant's motion for a separate trial "upon the question whether Volkswagen products are a 'market' in themselves." 34 F.R.D. at 136. Judge Wortendyke concluded that "The disclosures made during the discovery process and in connection with interrogatory motions satisfy me that the evidence upon the question of the relevant market, with respect to which the charges of monopoly have been made, is inextricably interwoven with the evidence upon all of the issues presented by the sixth cause of action, and the answers of the defendants thereto. To try the issue of relevant market separately from the other issues would not only involve unnecessary time and added expense, but might possibly result in inconsistent findings by the respective juries. None of the objectives envisaged by the provisions of the Rule relied upon would be likely of achievement should the questions referred to be separately tried." 34 F.R.D. at 138–139. Defendant attempts to distinguish this decision on the grounds that the problem of inconsistent jury determinations is not present here. However, an examination of the quoted language indicates that this danger was only one of the considerations relied on by the court.

While defendant's attempt to distinguish *Reliable Volkswagen* from the in-stant case does not succeed, this court is not persuaded that the principle for which that case stands is applicable here. The conclusory assertions contained in the supporting affidavits and memoranda submitted by the parties shed little light on the question of significant overlap between the evidence to be introduced at a separate trial on the market issues, and the main trial.

Even if the court concluded that there would be no overlap between the two trials, a separate trial would not be ordered unless it would also produce some affirmative movement toward disposing of this litigation. Absence of overlap promotes expedition only in the trivial sense that what is tried now need not be tried later. The court, therefore, explicitly refrains from basing its decision on the possibility of such overlap.

■ Plaintiff has also argued that even if a separate trial on the market issue resolved the issues of monopolization in favor of defendant, the attempted monopolization charge contained in the complaint would remain,[7] and that defendant's motion should, therefore, be denied. This argument is unconvincing. Proof of a relevant market is a necessary element of the offense of attempted monopolization. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); United States v. Chas. Pfizer & Co., 245 F. Supp. 737, 739 (E.D.N.Y.1965). A separate trial that disposed of one charge and established a necessary element of a second might well be considered to have promoted ease of adjudication.

tion upon the outstanding differences between the parties and therefore, should shorten the trial time for the remainder of the case." (Letter of May 21, 1962, pp. 3–4). This equivocal recommendation is not of significant help in resolving the question presented here. In any event, the court's views, expressed in this informal manner, do not have significant precedential value.

7. "Even in the unlikely event that defendant were to prevail on its claim that IBM has not monopolized any of the relevant markets, this would not dispose of the Government's allegations that IBM has attempted to monopolize one or more of the relevant markets herein." Plaintiff's Memorandum in Opposition to Defendant's Rule 42(b) Motion for a Separate Trial of the Market Issue, p. 5.

■ The problem lies in the assumption that the outcome of a trial on the market issues will resolve *any* part of this litigation. "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power. . . ." United States v. Grinnell Corp., 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). In turn, the concept of monopoly power is a complex one. The Supreme Court has stated that "a party has monopoly power if it has, over 'any part of the trade or commerce among the several states,' a power of controlling prices or unreasonably restricting competition." United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 389, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956). A definition of the relevant market for purposes of this action will, at best, enable the court to determine the market share of IBM in that market. However, this alone will not reveal whether IBM has the power "of controlling prices or unreasonably restricting competition." Certainly the larger the market share the more likely that IBM has monopoly power. Nevertheless, the determination that defendant controls any given proportion of a relevant market, without more, will not resolve any of the allegations contained in the complaint. Attention must also be given to the marketing practices in the industry, the importance of growth and technological change, and other considerations that can only be developed at a full trial. Market share is no holy talisman that alone determines whether a defendant has monopolized an industry. The granting of a separate trial on any issue lies within the discretion of the trial court. Shepard v. International Business Machines, 45 F.R.D. 536 (S.D.N.Y. 1968); Reines Distributors, Inc. v. Admiral Corp., 257 F.Supp. 619 (S.D.N.Y. 1966); Idzojtic v. Pennsylvania R. R., 456 F.2d 1228 (3rd Cir. 1972). Accordingly, defendant's motion for a separate trial on the issues of market definition is denied.

*The Census Motion*

In view of the court's decision on defendant's 42(b) motion, there is no need at this time to decide what use can best be made of the Census of the Electronic Data Processing Industry. The court is well aware of the need in complex cases to apply creative techniques in the acquisition and presentation of factual material. Manual for Complex Litigation, Part I § 2.70 et seq. Defendant's motion is denied without prejudice to renewal at a more appropriate stage of these proceedings.

So ordered.