Labib ISMAIL, Plaintiff,

v.

Scott COHEN, individually and as a New York City police officer, and City of New York, a Municipal Corporation, Defendants.

No. 85 Civ. 0121 (PKL).

United States District Court, S.D. New York.

Feb. 7, 1989.

Robert L. Herbst, New York City, for plaintiff.

Law Dept. of the City of New York Corp. Counsel, New York City, for defendants (Jane L. Gordon and Lisa S.J. Yee, of counsel).

## ORDER AND OPINION

LEISURE, District Judge:

This is a civil rights action under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, against Officer Scott Cohen ("Cohen") of the New York City Police Department and the City of New York (the "City").

The complaint alleges the following facts:

At approximately 8 a.m. on October 11, 1983, plaintiff attempted to move his automobile from its parked location in front of his residence at 105 West 55th Street, New York City. While plaintiff was allegedly having difficulty starting his vehicle, he was approached by defendant, Officer Scott Cohen of the New York City Police Department. Officer Cohen was in uniform and on duty.

Officer Cohen informed plaintiff that he was parked illegally, and began to issue a summons for the violation. Plaintiff attempted to persuade Officer Cohen not to issue the summons. When this proved ineffective, plaintiff turned to ask a bystander if he would be a witness to what was occurring. At this point, according to plaintiff, defendant Cohen allegedly assaulted plaintiff and arrested him on charges of assault, harassment, disorderly conduct, and resisting arrest. Subsequently, plaintiff was acquitted of all charges.

In addition to his § 1983 claim, plaintiff asserts that the acts and conduct of defendants constitute a full panoply of violations against him under New York law, consisting of assault, battery, false arrest, intentional infliction of emotional distress, abuse

of process, prima facie tort, negligence and gross negligence.

The action was filed on January 4, 1985. The Pretrial Order was submitted on October 21, 1987. The action was set for trial on December 5, 1989, and subsequently adjourned to January 4, 1989. At a pretrial conference held on December 13, 1989, the parties brought forward numerous issues for the first time. The action is currently before the Court on these applications.

## DISCUSSION

"Most lawyers who litigate in [this] court[] perform their function at a commendable level of professionalism, advancing claims and defenses with the zeal of a trained advocate, but properly tempering enthusiasm for a client's cause with careful regard for the obligations of truth, candor, accuracy, and professional judgment that are expected of them as officers of the court." *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689. Though the subject of sanctions is a distasteful one for this Court, it will not hesitate to impose appropriate sanctions in order to preserve the integrity of the judicial process. Any attorney "who so multiplies the proceedings in [this] case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (inherent power of the court to impose sanctions); *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986). The parties and their attorneys are hereby put on notice that the Court will not tolerate contumacious attitudes on their parts, nor

vexatiousness in unduly prolonging these proceedings.

### 1. Motion to Dismiss

#### A. *The Section 1981 Claim Against New York City*

■ Defendants have requested that this Court dismiss the claim, under 42 U.S.C. § 1981 against the City of New York, pursuant to Fed.R.Civ.P. 12(b)(6) [1], arguing that the doctrine of *respondeat superior* is inapplicable to claims brought under 42 U.S.C. § 1981. Plaintiff contends that the City can be held liable under § 1981 on a vicarious liability theory.

The *respondeat superior* doctrine has generally been held to be inapplicable to actions brought under 42 U.S.C. § 1983. *See, e.g., Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Ellis v. Blum*, 643 F.2d 68 (2d Cir.1981). However, both the Supreme Court and the Second Circuit have declined to state whether the doctrine applies to § 1981 actions. *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 392, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Krulik v. Board of Education of the City of New York*, 781 F.2d 15, 23 (2d Cir.1986). The *Monell* Court's rejection of *respondeat superior* in § 1983 claims against municipalities has no bearing on § 1981 claims. *See, e.g., Leonard v. City of Frankfort Elec. and Water Plant Bd.*, 752 F.2d 189, 194 n. 9 (6th Cir.1985) (citations omitted); *Pennsylvania v. Local Union 542*, 469 F.Supp. 329, *rev'd on other grounds sub. nom. General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). *But see Jett v. Dallas Independent School Dist.*, 798 F.2d 748 (5th Cir. 1986), *reh'g denied*, 837 F.2d 1244 (1988), *cert. granted* — U.S. ——, 109 S.Ct. 363,

1. On a motion to dismiss, the complaint must be read generously and every reasonable inference drawn in favor of the plaintiff. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986); *Metzner v. D.H. Blair & Co., Inc.*, 663 F.Supp. 716, 719 (S.D.N.Y. 1987). The complaint thus should only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.*, 790 F.2d 20, 22 (2d Cir.1986). Indeed, it is the Court's duty "to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985) (citations omitted).

102 L.Ed.2d 353 (1988).[2] "Most of the courts that have addressed the question have held that *respondeat superior* does apply to § 1981 actions against public employers." *Springer v. Seaman*, 821 F.2d 871, 880 (1st Cir.1987) (footnote omitted).[3] *See also Dickerson v. City Bank & Trust Co.*, 590 F.Supp. 714 (D.Kan.1984); *Haugabrook v. City of Chicago*, 545 F.Supp. 276 (N.D.Ill.1982); *Jones v. Local 520, Int'l Union of Operating Eng'rs*, 524 F.Supp. 487 (S.D.Ill.1981); *Ganguly v. New York State Dept. of Mental Hygiene*, 511 F.Supp. 420 (S.D.N.Y.1981); *Pennsylvania v. Local Union 542, supra; cf. EEOC v. Gaddis*, 733 F.2d 1373 (10th Cir.1984) (private employer); *Miller v. Bank of America*, 600 F.2d 211 (9th Cir.1979) (same).

As a general rule, the civil rights statutes should be construed individually since "[d]ifferent problems of statutory meaning are presented by two enactments deriving from different constitutional sources." *District of Columbia v. Carter*, 409 U.S. 418, 423, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1972), (*quoting Monroe v. Pape*, 365 U.S. 167, 205–06, 81 S.Ct. 473, 494, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting)). Section 1983 was enacted to enforce the fourteenth amendment as part of the Civil Rights Act of 1871, whereas section 1981 was originally enacted under the thirteenth amendment as section 1 of the Civil Rights Act of 1866 and later reenacted under the fourteenth amendment as section 16 of the Enforcement Act of May 31, 1870. In determining that a municipality cannot be held vicariously liable under § 1983 for the unconstitutional acts of its employees, the *Monell* Court relied upon the peculiar language, purpose and legislative history of that statute, which has no bearing on section 1981. *See, e.g., Williams v. City of New York*, No. 81 Civ. 0839, slip op. (S.D.N.Y. June 11, 1982); *Patton v. Dumpson*, 498 F.Supp. 933 (S.D.N.Y.1980). "The unequivocal language of [§ 1981] and its legislative history 'manifests Congress' purpose to enact sweeping legislation implementing the thirteenth amendment to abolish all the remaining badges and vestiges of the slavery system.'" *Springer v. Seaman*, 821 F.2d 871, 881 (1st Cir.1987) (*quoting Haugabrook v. City of Chicago*, 545 F.Supp. 276, 280 (N.D.Ill.1982) (citation omitted)).

There are significant differences between the language, legislative purpose and history of § 1981 and § 1983. Unlike section 1983, section 1981 contains no limitation to actions taken under color of state law and has been held to apply to private as well as public acts of discrimination without regard to whom the actor might be as long as the plaintiff suffered discrimination because of his or her race. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Furthermore, the legislative history of § 1981, unlike § 1983,

---

**2.** The *Jett* Court found that to allow recovery based on vicarious liability under § 1981 would be inconsistent with the Supreme Court's reasoning in *Monell*. The *Jett* Court interpreted *Monell* as focusing not on a particular type of "federal" wrong, but rather on a particular type of liability for all such wrongs. However, the *Jett* Court ignored the fact that the *Monell* Court based its decision on the language, legislative history and purpose of § 1983. Section 1981 and section 1983 implement two different constitutional provisions. Without citation to any language or legislative history of section 1981 the *Jett* court rejected the common-law principle of *respondeat superior* under § 1981 basing its decision entirely on its reading of *Monell* and the legislative history of § 1983. The Court finds this decision unpersuasive as it both goes against the weight of authority and fails to enunciate any authority under § 1981 for its position.

**3.** *But see Banerjee v. Roberts*, 641 F.Supp. 1093, 1104 n. 5 (D.Conn.1986); *Babus v. Tronosky*, 563 F.Supp. 314, 315 (S.D.N.Y.1983). These cases held, without discussion, that the doctrine of *respondent superior* was inapplicable in actions against a municipality under section 1983 *and* section 1981. The absence of any discussion concerning the significant differences in the language, legislative history and purpose of the two statutes, however, deprives these decisions of any notable precedential value or effect on this issue. *Haugabrook v. City of Chicago*, 545 F.Supp. 276, 281 n. 7 (N.D.Ill.1982). *Cf. United States v. City of Chicago*, 549 F.2d 415, 425 n. 9 (7th Cir.1977) (cases holding that city was not a "person" for purposes of both sections 1981 and 1983 not binding where they gave no consideration to the quite different language and history of section 1981).

does not evidence any intention to reject the concept of *respondeat superior* ordinarily applicable in common law tort actions or to import into that statute any strict causation requirements that are apparent in the debates on and the wording of section 1983. *See Mahone v. Waddle*, 564 F.2d 1018, 1031 (3d Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Haugabrook v. City of Chicago*, 545 F.Supp. 276, 281 (N.D.Ill. 1982). Moreover, there is ample authority for the proposition that private corporate defendants may be held vicariously liable under § 1981 for the racially discriminatory conduct of their employees, *Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir.1979); *Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir.1977), and there is no principled reason to distinguish between private and public employers based on the wording or history and purpose of section 1981.[4]

The Court holds that the doctrine of *respondeat superior* is applicable to claims brought under 42 U.S.C. § 1981. Accordingly, defendants' motion to dismiss the § 1981 claims against the City of New York is denied.

### B. *Notice of Claim*

Defendants also seek, pursuant to Fed.R. Civ.P. 12(b)(6), to dismiss certain state law claims allegedly not identified in plaintiff's notice of claim.[5] Specifically, defendants assert that plaintiff's notice of claim is not a sufficient predicate for the state law causes of action of intentional infliction of emotional distress, abuse of process, negligence and gross negligence.

New York General Municipal Law Section 50–e requires that a notice of claim be filed, within 90 days of the accrual of a claim, prior to commencing a tort action against a municipality and/or its employees. *Wrenn v. New York City Health and Hospitals Corp.*, 104 F.R.D. 553 (S.D.N.Y. 1985). Although the Court lacks the authority to dispense with or disregard this statutorily imposed condition precedent, *Pierson v. City of New York*, 56 N.Y.2d 950, 956, 453 N.Y.S.2d 615, 439 N.E.2d 331 (1982), the parties may nevertheless be estopped from raising this defense. *Bender v. New York City Health & Hospital Corp.*, 38 N.Y.2d 662, 382 N.Y.S.2d 18, 345 N.E.2d 561 (1976). "[W]here a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise could have raised." *Id*, 382 N.Y.S.2d at 20–21, 345 N.E.2d at 564. This equitable bar to a defense may arise by virtue of positive acts or omissions where there is a duty to act. *Id*. "By applying the doctrine of equitable estoppel to notice of claim situations, the courts may insure that statutes like section 50–e of the General Municipal Law, do not become 'a trap for the unwary or ignorant.'" *Id*. at 21, 345 N.E.2d at 564 (*quoting Sweeney v. City of New York*, 225 N.Y. 271, 273, 122 N.E. 243 (1919)).

In the case at bar, defendants move over four years after the filing of both the notice of claim and the complaint, on the eve of trial, to dismiss most of the state law claims, asserting for the first time that the

---

**4.** A municipality can be held vicariously liable for the official acts of its employees. *See, e.g., Williams v. City of New York*, No. 81 Civ. 0839, slip op. (S.D.N.Y. June 11, 1982).

**5.** Plaintiff's notice of claim stated, in part:
  2. The Nature of the Claim:
    Claimant was struck and arrested, both without lawful cause, by a New York City Police Officer. He was held in jail until his arraignment, some 72 hours later.
  3. The Time When, the Place Where and the Manner in Which the Claim Arose:

Around 8:00 a.m. October 11, 1983. In the vicinity of 105 West 55th St. Claimant was attacked with no provocation of which he was aware.
  4. The Items of Damage or Injuries Claimed are (do not state dollar amounts):
    Physical injuries resulting from the officer's blow and claimant's being knocked to the pavement. The exact extent of the injuries is still undetermined. Physical, emotional and mental injuries from the arrest and its aftermath.

notice of claim is deficient. This claim is firmly rejected.

The only specific deficiency in the notice of claim asserted by defendants concerns the malicious prosecution cause of action. A claim for malicious prosecution arises on the date that the criminal charges against the defendant are dismissed on the merits or a verdict is entered in defendant's favor, either occurrence being an essential element to such a claim. *See, e.g., Vitale v. Hagan,* 132 A.D.2d 468, 517 N.Y.S.2d 725 (1st Dep't 1987), *modified,* 71 N.Y.2d 955, 528 N.Y.S.2d 823, 524 N.E.2d 144 (1988); *Kelly v. Kane,* 98 A.D.2d 861, 470 N.Y.S.2d 816 (3d Dep't 1983). Plaintiff's notice of claim was filed on or about January 4, 1984. Thus, at the time the notice of claim was served the cause of action for malicious prosecution had not yet arisen. *Vitale v. Hagan, supra.* Therefore, plaintiff failed to comply with GML § 50–e which requires that a notice of claim "shall ... be served ... within ninety days *after* the claim arises." GML 50–e[1][a] (emphasis added).

■ However, the Court finds that defendants have admitted the sufficiency of plaintiff's notice of claim. Plaintiff asserted in his complaint that he "timely made and served a notice of claim ... within 90 days of the incident and has otherwise complied with the statutory requirements of the General Municipal Law of the State of New York...." Complaint ¶ 22. In their answers, defendants denied only "so much of paragraph 22 of the Complaint as allege or purport to allege that defendants City or Scott Cohen are liable in any way to plaintiff." City Answer ¶ 9; Cohen Answer ¶ 9 (hereinafter "answers"). Thus, defendants did not deny, and are therefore deemed to have admitted, the specific allegations of the complaint asserting that plaintiff's notice of claim was an adequate predicate to all of its state law claims. *See* Fed.R.Civ. P. 8(d).

Defendants contend that they denied "liability" in paragraph 9. But paragraph 22 of the complaint did not generally allege "liability," it alleged compliance with the General Municipal Law notice require-

ments. Those specific averments were not denied. The only reasonable reading of paragraph 9 of the answers is that defendants intended in good faith to admit the specific allegations of paragraph 22 of the complaint, but did not wish to leave any implication that defendants were somehow admitting overall liability when they did so.

Moreover, defendants made this concession in the pretrial order filed in October 1987. Nowhere in defendants' lengthy list of contested factual or legal issues is there any reference to the issue of notice. Pretrial Order §§ 4B and 5B. The parties are bound to the issues raised in the pretrial order. *See, e.g., Fernandez v. United Fruit Co.,* 200 F.2d 414 (2d Cir.1952), *cert. denied,* 345 U.S. 935, 73 S.Ct. 797, 97 L.Ed. 1363 (1953); *Sun Oil Co. v. The S.S. Georgel,* 245 F.Supp. 537 (S.D.N.Y.1965), *aff'd,* 369 F.2d 406 (2d Cir.1966); *Neuspickle v. Knoxville,* 48 F.R.D. 441 (E.D.Tenn.1969) (defendant could not claim lack of notice as issue not contained in pretrial order).

■ Furthermore, even if the above did not constitute an admittance, it is clear that equitable estoppel would apply. Plaintiff relied to his detriment on the action of defendants. General Municipal Law § 50–e(5) gives the courts the authority to permit a plaintiff to file a late notice of claim so long as such application is made within one year and ninety days of the accrual of the cause of action. *Pierson v. City of New York,* 56 N.Y.2d at 955, 453 N.Y.S.2d 615, 439 N.E.2d 331. Defendants served their answers on February 22, 1985. Plaintiff had 90 days after the accrual of any claims stemming from his arrest on October 11, 1983, to file a notice of claim; and 90 days after the accrual of any claims stemming from the dismissal of criminal charges on February 29, 1984, to file a second notice of claim. Moreover, plaintiff had one year and ninety days from the aforementioned dates to move to file a late notice of claim. Plaintiff failed to make a motion to file a claim *nunc pro tunc* based on the representations of defendants in their answers. If defendants had properly denied the notice of claim allegations in the complaint, plaintiff could have moved to

250

cure any defect. *Compare Vitale v. Hagan,* 132 A.D.2d 468, 517 N.Y.S.2d 725, 728 (1st Dep't 1987), *modified,* 71 N.Y.2d 955, 528 N.Y.S.2d 823, 524 N.E.2d 144 (1988) (by raising an affirmative defense in its answer and moving unsuccessfully three times to dismiss the malicious prosecution cause of action, defendant gave plaintiff ample notice of the defect in the notice of claim).

The purpose of the notice of claim requirement is to give the municipality an opportunity to conduct a preliminary investigation and adjust the claim without incurring the added expense of legal costs if it deems the claim meritorious. *Torres v. City of New York,* 123 Misc.2d 107, 473 N.Y.S.2d 101, 104 (Sup.Ct.1984). The notice of claim requirement is intended to enable a "prompt investigation and preservation of evidence of the facts and circumstances out of which claims arise." *Matter of Beary v. City of Rye,* 44 N.Y.2d 398, 412, 406 N.Y.S.2d 9, 13, 377 N.E.2d 453, 458 (1978). It is clear the underlying purpose of the notice of claim requirement has been fully met in the present instance. The Comptroller conducted an investigation prior to the initiation of this lawsuit, including a full-scale examination of plaintiff under oath on July 30, 1984. *See* Exhibit 3 attached to Plaintiff's January 4, 1989 Letter Brief. Indeed the Comptroller asked and was told during his examination of plaintiff that plaintiff had been acquitted of criminal charges thus clearing the way for a malicious prosecution claim. *Id.* 406 N.Y.S.2d at 12–13, 377 N.E.2d at 457. No offer to adjust any of plaintiff's claims was ever made by the Comptroller, or later, by the Corporation Counsel defending both Officer Cohen and the City. It is apparent from the vigorous defense of this action by the City that it never had any intention to adjust plaintiff's claim. *See Torres, supra,* 473 N.Y.S.2d at 104. As defendants originally believed the notice of claim to be adequate and so represented in this litigation, thus preventing plaintiff from litigating the issue and ultimately curing any defect, defendants are estopped from raising any defects now.

Moreover, defendants' contention that plaintiff's notice of claim is not a sufficient predicate for the state law causes of action of intentional infliction of emotional distress, abuse of process, negligence or gross negligence is without merit. Defendants' argument appears to be primarily that because the notice of claim does not mention those causes of action *in haec verba,* it should not reasonably be construed to refer to those claims. But, General Municipal Law § 50–e does not require that a claimant specify a precise cause of action; it requires only that he specify the time, place and manner in which his claims arose. The test of the notice's sufficiency is whether the notice includes information sufficient to enable the City to investigate the claims. *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 359, 445 N.Y.S.2d 687, 689, 429 N.E.2d 1158, 1160 (1981).

Here the notice of claim did not specify any particular cause of action by name. But it fully informed the City that plaintiff has been struck and arrested without lawful cause, that he was detained in jail until his arraignment, that he was attacked entirely without provocation, and that his injuries included emotional and mental injuries as well as physical injuries. Just as defendants were on notice that plaintiff's claims included assault, battery, false arrest, false imprisonment, and prima facie tort, as conceded by defendants in not challenging those causes of action here, defendants were also on notice that plaintiff's claims included abuse of process, infliction of emotional distress, negligence and gross negligence.

In sum, to now adopt defendants' contentions and dismiss the state law claims would condone alleged conduct which seeks to profit from innocent error. Defendants' motion to dismiss the state law claims of intentional infliction of emotional distress, abuse of process, negligence and gross negligence, is hereby denied.

2. Motion to Sever

Plaintiff has requested that the Court sever, pursuant to Fed.R.Civ.P. 42(b) or 20(b), the § 1983 (the *"Monell"*) claim

against the City. The Court has broad discretion to order separate trials to avoid delay or prejudice. *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363 (2d Cir.1988); *United States v. 499.472 Acres of Land More or Less,* 701 F.2d 545 (5th Cir.1983); Fed.R.Civ.P. 42(b) (court may order separate trials "in furtherance of convenience or to avoid prejudice"); Fed.R.Civ.P. 20(b) (court "may order separate trials or make other orders to prevent delay or prejudice").

■ A Court may order separate trials in order to (1) avoid prejudice; (2) provide for convenience; or, (3) expedite the proceedings and be economical. *United States v. International Business Machines Corp.,* 60 F.R.D. 654, 657 (S.D.N.Y.1973). Only one of these conditions need be met for the Court to order a separate trial. In a complex case with complex issues, justice is often best served if issues are separated. *See, e.g., Organic Chemicals, Inc. v. Carroll Products, Inc.,* 86 F.R.D. 468, 469 (W.D.Mich.1980).

### Prejudice to Defendant

■ In addressing the issue of prejudice, the courts have usually been concerned with the effect that trying several issues will have on a jury. Prejudice, for instance, may occur when evidence is admissible only on a certain issue, and it is feared that the party may be prejudiced in the minds of the jury. *See, e.g., Anthony v. Aetna Life and Casualty Company,* 60 F.R.D. 101 (N.D.Ill.1973); *Turner v. Transportacion Maritima Mexicana,* 44 F.R.D. 412 (E.D.Pa.1968). *See also Larsen v. Powell,* 16 F.R.D. 322 (D.Colo.1954) (knowledge of insurance might prejudice the jury); *Baker v. Waterman S.S. Corp.,* 11 F.R.D. 440 (S.D.N.Y.1951) (gruesome nature of injuries might prejudice the jury).

In the present instance, there is a danger that evidence admissible on the issues relating to conduct by the City or Officer Cohen will "contaminate" the mind of the finder of fact in its consideration of the liability of the other defendant. For example, evidence concerning a *de facto* policy encouraging discrimination of the City, or

that the City failed to train adequately its officers, could prejudice the jury in its determination of the culpability of defendant Cohen based on the specific incident involving plaintiff. Likewise, if the jury determines that Officer Cohen is culpable this might unfairly influence its determination of whether the City had a *de facto* policy leading to discriminatory treatment.

### Ease of Adjudication

Additionally, separate trials in this instance would further convenience and be conducive to expedition and economy. A separate trial that disposes of one charge or establishes a necessary element of a second charge promotes ease of adjudication. *United States v. International Business Machines Corp.,* 60 F.R.D. 654, 657 (S.D.N.Y.1973). In the present case, both the state law and the § 1981 claims against the City rest solely on vicarious liability theories. The City has conceded that Officer Cohen was employed by the City and was acting within the scope of his official duties at all relevant times. City's Answer ¶ 13. The trial of the claims against defendant Cohen on both the state law and § 1981 claims will therefore be determinative of the City's liability on these grounds.

It is also important to determine whether or not documentary proof required by the two issues to be separated overlaps. *Reading Industries, Inc. v. Kennecott Copper Corp.,* 61 F.R.D. 662 (S.D.N.Y.1974). As to the § 1983 claim against the City, this claim would involve a great deal of evidence which is entirely unnecessary to the resolution of all of the other claims in the case. The claims involved require proof of different facts and the *Monell* claim would involve the introduction of quite broad evidence unnecessary to claims to be heard in the first trial. *See Baxter Travenol Laboratories, Inc. v. LeMay,* 536 F.Supp. 247, 250–51 (S.D. Ohio 1982). The presentation of divergent standards and factual evidence in one trial could lead to jury confusion. The § 1983 claim against the City would present different and far more complicated standards of liability and causation

for the jury, would greatly expand the length and scope of the trial and would add to the expense of the parties. Separate trials in this instance would be of further convenience and be conducive to expedition and economy.

█ The Court hereby orders separate trials pursuant to Rule 42(b). The first trial will try all claims against defendant Cohen as well as the § 1981 and state law claims against the City. This trial will be followed by a trial of the § 1983 claim against the City.

### 3. Evidentiary Issues

#### A. Castaldo Incident

According to the Pretrial Order, plaintiff intends to introduce into evidence the Civilian Complaint Review Board ("CCRB") complaint involving defendant Cohen and a non-party, Angelo Castaldo ("Castaldo"). Plaintiff also intends to call Castaldo as a witness at trial. Plaintiff offers this evidence pursuant to both Fed.R.Evid. 404(b) and 607. Defendants contend that this evidence is both irrelevant and unfairly prejudicial, thereby rendering it inadmissible. Fed.R.Evid. 402, 403.

The Castaldo incident occurred on December 27, 1983, less than three months after the incident involving plaintiff and Officer Cohen. Plaintiff contends that this evidence will show: Officer Cohen punched another individual, Angelo Castaldo, who had suffered a seizure on the street. Officer Cohen deliberately placed handcuffs on Castaldo very tightly; falsely claimed both he and his partner had been injured by Castaldo; and lied about other aspects of the incident to cover up his own misconduct. Castaldo was arrested and charged with assault. At least one bystander complained about Officer Cohen's conduct at the scene and apparently followed up with a complaint to the police department, in which she asserted that Officer Cohen had hit Castaldo when he was down. Further, plaintiff contends that Officer Cohen's deposition testimony in this case falsely claimed Castaldo had punched him and his partner. Officer Cohen allegedly admitted that neither he nor his partner were injured in the incident.

Rule 404(b) specifically provides for the admission of evidence of other wrongs or acts, either prior to or subsequent to the incident in question, which are relevant to an actual issue in the case. *See, e.g., United States v. Hurley,* 755 F.2d 788, 790 (11th Cir.1985); *United States v. Riley,* 657 F.2d 1377, 1388 (8th Cir.1981). Rule 404(b) requires a two-part analysis; first, consideration of whether the evidence fits within the exceptions listed in the rule and, second, balancing the probative value of the evidence against the likelihood of undue prejudice, equivalent to the analysis under Rule 403. *Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319, 327–28 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *United States v. Margiotta,* 662 F.2d 131, 142 (2d Cir.1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). The Second Circuit has long been committed to the "inclusionary" approach to the admissibility under Fed.R.Evid. 404(b) of similar act evidence. *See, e.g., United States v. Benedetto,* 571 F.2d 1246, 1248 (2d Cir.1978) (*citing* McCormick, *Evidence* § 109, at 447 (2d ed. 1972)).

█ Evidence of similar bad acts is admissible if it is substantially relevant for some purpose other than to show the character of a person in order to prove that he acted in conformity therewith. *Id. See also United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986). Evidence of similar acts is admissible for such purposes as "proof of motive, opportunity, intent, preparation, plan [or] knowledge." Fed.R.Evid. 404(b). The similar act evidence will be admitted "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). No preliminary finding by the district court that the defendant committed the other act is required. *Id.* No criminal conviction, civil judgment, administrative finding, or even preliminary judicial finding is necessary before specific acts of other misconduct may be introduced as extrinsic evi-

dence under Rule 404(b) to prove wrongful intent, motive, or pattern of relevant conduct, *Huddleston v. United States*, — U.S. —, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988), or an "aggravated state of mind." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 n. 1 (2d Cir.1988) ("an intent to inflict needless injury").

A plaintiff in an excessive force case is entitled to prove by extrinsic evidence of other instances that the police officer defendant acted "maliciously and sadistically for the very purpose of causing harm," and such an aggravated state of mind is relevant even where the police officer admits that he intended to use force in the incident primarily at issue at the trial. *O'Neill*, 839 F.2d 9 (2d Cir.1988). Plaintiff contends he will make just such a showing in the present case.

In the case at bar, the evidence concerning the Castaldo incident is offered to demonstrate both a relevant pattern and intent. The pattern of misconduct would be the following: defendant Cohen applying handcuffs too tightly, falsely claiming injury from the citizen to cover up his own inappropriate use of physical force, and filing false charges for the same purpose. These actions represent a relevant pattern in which plaintiff intends to show that Officer Cohen has a pattern of lashing out physically when he feels his authority is challenged by a citizen with whom he is dealing on the street. Furthermore, the Castaldo incident is offered to demonstrate Officer Cohen's wrongful intent to abuse his public office and to lie thereafter about it. Proof of such intent is a critical part of plaintiff's case. The evidence offered by plaintiff therefore meets the first prong of Rule 404(b).

Under the second part of the analysis the Court must determine whether the evidence should be excluded under Fed.R. Evid. 403. Rule 403 states that relevant evidence may be excluded if its probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice to a party. The District Court is provided with broad discretion in making decisions under Rule 403. *Outley v. The City of New York*, 837 F.2d 587 (2d Cir.1988). To be sure, all evidence incriminating a defendant is, in one sense of the term, "prejudicial" to him: that is, it does harm to him. In that sense, the more pertinent evidence is, the more prejudicial it is. What "prejudice," as used in Rule 403 means, is that the admission is, as the rule itself literally requires, "unfair" rather than "harmful" evidence. *United States v. Jimenez*, 789 F.2d 167 (2d Cir.1986).

The Court finds that plaintiff has made a satisfactory showing that this evidence is offered for a fact in issue, other than to show propensity. The probative value of this evidence far outweighs any prejudice which might ensue. Moreover, the Court will guard against any such prejudice by cautioning the jury that the proof was offered for the sole and limited purpose of establishing a wrongful intent or motive or a relevant pattern of conduct. The Second Circuit has repeatedly recognized the efficacy of such cautionary instructions. *See, e.g., United States v. Danzey*, 594 F.2d 905, 915 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). Therefore, evidence concerning the Castaldo incident is admitted under Rule 404(b) as long as plaintiff can overcome any relevant hearsay or other evidentiary objections at trial.

### B. *Expert Witnesses*

Additionally, defendants request that the testimony of plaintiff's experts on the *Monell* issue (the "Conyers witnesses") be precluded. Defendants contend this evidence is irrelevant and unfairly prejudicial, presumably under Fed.R.Evid. 403. Plaintiff intends to offer the testimony of the Conyers witnesses to support his § 1983 claim against the City, which claim will be tried separately subsequent to the trial of all other claims against the City and Officer Cohen. Plaintiff asserts that any evidence offered by these witnesses will be linked to the facts of this case, i.e., to the alleged abuse of office by Officer Cohen and to the City's knowledge of and deliberate indifference to similar patterns of conduct in the police department.

Plaintiff's "experts" also testified before the Subcommittee on New York Police Department Misconduct (the "Conyer's Hearings").[6] However, defendants' objection to this testimony is premature. Defendants have not deposed the Conyers witnesses and therefore can not make a cogent argument that the testimony of these witnesses should be excluded. Plaintiff is entitled to present this evidence, as asserted, at trial, as long as he can lay the necessary foundation under Fed.R.Evid. 702,[7] and overcome any other evidentiary objections. Counsel are directed to conduct any discovery concerning these witnesses before trial, as the trial is not the proper forum for such matters. *See* Fed.R.Civ.P. 26(b)(4).

### 4. Discovery Issues and Amendments to Pre–Trial Order

The Court has wide discretion in punishing failure to conform to the rules of discovery. *Outley v. The City of New York,* 837 F.2d 587, 590 (2d Cir.1988) (Oakes, J.). "The rules of discovery were not designed to encourage procedural gamesmanship," *id.* at 590, and it has consistently been the Second Circuit's position, as observed by then Chief Judge Kaufman, that "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where ... they are clearly warranted." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Picture Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979). The parties and their attorneys are hereby put on notice that the Court will not tolerate contumacious attitudes on their part, nor vexatiousness in unduly prolonging these proceedings.

### A. *Lost Income*

In plaintiff's responses to defendants' first set of interrogatories and document requests, sworn to on June 19, 1985, plaintiff refused defendants' demand that he identify and produce relevant income information. Plaintiff there stated, that he "does not claim loss of earnings as a result of this incident *at this time.*" *See,* Plaintiff's Responses to Interrogatories attached as Exhibit B to Defendants Letter–Brief dated December 29, 1988 (emphasis added). Plaintiff now asserts an intention to offer proof of lost income at trial. However, plaintiff cannot have it both ways: either he must update his interrogatory answers and produce the requested documents prior to trial or all evidence on this issue must be precluded.

Under Fed.R.Civ.P. 26(e)(2)

"[a] party is under a duty seasonably to amend a prior response [to a discovery request] if the party obtains information upon the basis on which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment."

While Rule 26 itself does not provide for express sanctions for a violation, the Advisory Committee note states that sanctions may include "exclusion of evidence, continuance, or other action, as the court may deem appropriate." *See also Outley v. City of New York,* 837 F.2d 587, 589 (2d Cir.1988); *Szilvassy v. United States,* 82

---

**6.** This Court previously held that the *Report on Hearings in New York City on Police Misconduct by the Subcommittee on Criminal Justice (the "Subcommittee") of the Committee on the Judiciary of the United States House of Representatives, Ninety–Eighth Congress, Second Session* (1984) (the "Conyer's Report") was inadmissible hearsay. *Anderson v. City of New York,* 657 F.Supp. 1571 (S.D.N.Y.1987). The Conyer's Report is based on two open session hearings held by the Subcommittee on New York Police Department misconduct. Members of the Subcommittee heard testimony from both persons alleging police misconduct and officers alleging misconduct.

**7.** Taken collectively, plaintiff seems to face insurmountable hurdles before any such testimony will be received in evidence: Fed.R.Evid. 702 (qualifications as an expert); Rule 401 (materiality); Rule 402 (relevancy); Rule 601 (competency); Rule 901 (authentication); Rule 403 (probative value substantially outweighed by unfair prejudice); and Rules 403 and 611(a) (considerations of undue delay, waste of time, or needless presentation of cumulative evidence); *see generally In Re Air Crash Disaster at New Orleans, L.A.,* 795 F.2d 1230, 1233–34 (5th Cir.1986) (Higginbotham, J.).

F.R.D. 752 (S.D.N.Y.1979) (dismissing complaint for failure to supplement answers to interrogatories). Plaintiff is hereby ordered to update its responses to defendants' interrogatories on lost income and produce the requested documents or any evidence on this issue will be precluded by the Court at trial.

### B. *Motion to Compel*

Plaintiff asks this Court to compel defendants to produce the Bellevue Hospital ("Bellevue") records and a copy of the transcript of the deposition of a non-party witness, George Kapusta ("Kapusta"), pursuant to Fed.R.Civ.P. 37(a). The Bellevue records will be discussed, *infra*, at 256.

Plaintiff seeks a copy of the deposition transcript of George Kapusta, a non-party witness. This transcript is on file with the Clerk of this Court and is available for plaintiff to review. Fed.R.Civ.P. 30(f). Plaintiff's motion to compel is therefore denied.

### C. *Amendments to the Pre–Trial Order*

Defendants request the following amendments to the Pre–Trial Order: the addition of (1) Thomas Vetter ("Vetter"), listed as a witness for plaintiff, as a witness for defendants; (2) certain foundation and authenticating witnesses for Defendants' Exhibits A, B & G; (3) witnesses and exhibits concerning lost income including an economist, a vocational expert, and possibly, an accountant; and (4) plaintiff's Bellevue Hospital records. As noted above, plaintiff asks this Court to compel the defendants to produce the Bellevue Hospital records.

■■■■ A pretrial order may be modified to prevent "manifest injustice." Fed. R.Civ.P. 16. Permission to amend a pretrial order is to be granted when "the interests of justice make such a course desirable." *Madison Consultants v. Federal Deposit Insurance Corp.*, 710 F.2d 57, 62 n. 3 (2d Cir.1983) (*citing Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591 (2d Cir.), *cert. denied*, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964)). In determining whether to grant an amendment to a pre-

trial order, the Court must consider whether any prejudice to the opposing side will result. A factor in this consideration is whether the amendment is sought in the midst of trial, *see Price v. Inland Oil Co.*, 646 F.2d 90, 95–6 (3d Cir.1981), or on the eve of trial. *See Madison Consultants*, 710 F.2d at 62 n. 3 (*citing Laguna v. American Export Isbrandtsen Lines, Inc.*, 439 F.2d 97, 103 (Lumbard, C.J., dissenting) (2d Cir.1971)). The Court in making such a determination must balance "the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements." *Laguna, supra* at 101.

■■■ Defendants request the pretrial order be amended to include Vetter as a witness for the defense. Defendants contend that Vetter is necessary as he is a witness to the Castaldo incident. Vetter is currently on plaintiff's witness list in the pretrial order. As Vetter is currently listed as a witness, no prejudice or surprise will enure to plaintiff if he is also listed as a witness for the defense. The interests of justice mandate that this amendment to the Pretrial Order be granted.

■■■ Additionally, defendants ask to amend the pretrial order to include foundation and authentication witnesses for certain enumerated exhibits. The Pretrial Order in this action was signed on October 21, 1987, properly listing defendants' exhibits. Plaintiff can claim no prejudice or surprise by the mere addition of necessary foundation and authentication witnesses to exhibits of which plaintiff was fully apprised. On the other hand, if defendants are prevented from offering exhibits listed in the Pretrial Order due to an inability to authenticate such documents "manifest injustice" will result. However, defendants neither list who will be added as witnesses nor delineate what their testimony will include. Defendants are hereby ordered to submit a proposed amendment to the Pretrial Order enumerating the witnesses sought to be added and delineating their expected testimony.

■ However, as to the other amendments requested, defendants have failed to demonstrate that unless the pretrial order is amended manifest injustice will result. First, defendants request that they be permitted to add additional witnesses and exhibits concerning the lost income issue. This request is premature. Plaintiff has indicated that he will waive any claim for lost income rather than submit to further discovery which will delay the trial. When, and if, discovery on the lost income issue occurs defendants may then move for an amendment to the pretrial order. Any such request must specify the witnesses and exhibits proposed to be included in the amendment sought.

Finally, defendants request this Court permit an amendment to the pretrial order to include the Bellevue Hospital records of plaintiff. Despite this Court's directive at the pretrial conference of December 13, 1988, that defendants permit plaintiff to copy these records, defendants have failed to do so. To date, plaintiff has been unable to view these records.[8] Obviously, no amendment to the pretrial order with respect to these records can be permitted until plaintiff's counsel has received copies of these records and can knowledgeably take a position on defendants' request. Therefore, defendants are ordered to make the Bellevue records available to plaintiff's counsel for copying. Any future amendment regarding these records can only be made on consent of both parties.

## CONCLUSION

In conclusion, defendants' motion to dismiss both the § 1981 claim and various state law claims is denied. The § 1983 claims against the City of New York are hereby severed and will be tried separately. The trial of all claims against defendant Cohen and the § 1981 claims against the

City is hereby set for February 27, 1989 at 9:30 a.m. in Courtroom 36.

Furthermore, defendants request to amend the Pretrial Order is granted in part and denied in part. Defendants shall submit a proposed order amending the Pretrial Order, in accordance with this opinion, within seven days of its issuance.

SO ORDERED.

---

**8.** In his interrogatory response, plaintiff fully set forth the fact that he was treated at Bellevue, gave all the particulars, and truthfully set forth the fact that he did not have those records in his possession. Plaintiff's present counsel was informed by earlier counsel that the Bellevue records had been subpoenaed in the prior criminal case but had purportedly been lost and therefore were not produced. *See* Plaintiff's

Letter Brief dated January 23, 1989 at 8. Nevertheless, plaintiff served a subpoena *duces tecum* on Bellevue returnable December 5, 1988, the day initially set for trial of this action. Bellevue, a city hospital, neither moved to quash nor complied with the subpoena. It appears, however, that the records were turned over to counsel for the defense.